# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP53-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Dennis Brantner, |
| | Defendant-Appellant-Petitioner. |

---

REVIEW OF DECISION OF THE COURT OF APPEALS

---

| | |
|---|---|
| OPINION FILED: | February 25, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 3, 2019 |

---

SOURCE OF APPEAL:

| | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Fond du Lac |
| JUDGE: | Peter L. Grimm |

---

JUSTICES:

KELLY, J., delivered the majority opinion of the court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, and DALLET, JJ., joined, and in which ROGGENSACK, C.J. and ZIEGLER, J., joined as to parts I, II, III.B, III.C, and IV. ROGGENSACK, C.J., filed a concurring opinion, in which ZIEGLER, J., joined.

NOT PARTICIPATING:

HAGEDORN, J., did not participate.

---

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Taylor Rens* and *Krug & Rens LLC*, West Allis. There was an oral argument by *Taylor Rens*.

For the plaintiff-respondent, there were briefs filed by *Lisa E.F. Kumfer*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Lisa E.F. Kumfer*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP53-CR
(L.C. No. 2015CF457)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

        Plaintiff-Respondent,

  v.

Dennis Brantner,

        Defendant-Appellant-Petitioner.

**FILED**

**FEB 25, 2020**

Sheila T. Reiff
Clerk of Supreme Court

KELLY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, and DALLET, JJ., joined, and in which ROGGENSACK, C.J. and ZIEGLER, J., joined as to parts I, II, III.B, III.C, and IV. ROGGENSACK, C.J., filed a concurring opinion, in which ZIEGLER, J., joined.

Brian K. Hagedorn, J., did not participate.

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.*

¶1 DANIEL KELLY, J. Fond du Lac County sheriff's detectives arrested Mr. Brantner at the Kenosha County courthouse and transported him to the Fond du Lac County jail to face criminal charges unrelated to this case. During the booking process, a sheriff's deputy discovered a cache of narcotics and prescription

medications in Mr. Brantner's boot, a discovery that gave rise to his trial in this case in the Fond du Lac County circuit court. Mr. Brantner says he should not have been tried in Fond du Lac County because he did not possess the drugs when the deputy discovered them——not because the drugs were not there——but because the arrest in Kenosha County terminated, as a matter of law, his ability to possess any contraband on his person. We disagree. Mr. Brantner did not lose possession of the drugs in his boot upon his arrest in Kenosha County. And because he still possessed the drugs in Fond du Lac County, venue there was proper.

¶2 Mr. Brantner also says that two of the charges on which the jury convicted him were multiplicitous. One of the charges was for possession of 20mg oxycodone pills in violation of Wis. Stat. § 961.41(3g)(am) (2017-18).[1] The other was for possession of 5mg oxycodone pills in violation of the same statute. We agree with Mr. Brantner, and so reverse the court of appeals with respect to his multiplicity challenge.[2]

### I. BACKGROUND

¶3 Six years ago, Mr. Brantner was in the Kenosha County circuit court defending against a charge that he was a "felon in possession of a firearm." As he left the courtroom, he immediately

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[2] This is a review of the court of appeals, State v. Brantner, No. 2018AP53-CR, unpublished order (Wis. Ct. App. Jan. 2, 2019), which summarily affirmed the Fond du Lac County postconviction court's denial of Mr. Brantner's postconviction motion, the Honorable Peter L. Grimm, presiding.

encountered two Fond du Lac County sheriff's detectives. They were there to arrest him in connection with a thirty-year-old homicide. The detectives handcuffed Mr. Brantner with a belly belt, patted him down, searched his pockets, and transported him to Fond du Lac County for processing.

¶4 The booking process at the Fond du Lac County jail required Mr. Brantner to remove the outer layer of his clothing, including his footwear. He removed his right boot easily enough but encountered difficulty with his left boot. He said he had a muscle spasm in his calf, which he addressed by striking his leg for 20-30 seconds. One of the detectives offered to help him remove the boot, but Mr. Brantner declined. Eventually, with the muscle spasm apparently resolved, Mr. Brantner successfully removed his remaining boot and turned it over to the sheriff's deputy processing his belongings. Inside the boot the deputy found a bag containing a total of 54 pills, comprising: (1) 35 20mg oxycodone pills; (2) two 5mg oxycodone pills; (3) two pills containing both 325mg of acetaminophen and 5mg of hydrocodone; (4) 11 12.5mg zolpidem pills; and (5) four 10mg cyclobenzaprine pills. Nothing in the record indicates that, before Mr. Brantner handed his boot to the deputy, the detectives had known the drugs were in Mr. Brantner's boot.

¶5 Mr. Brantner did not have a valid prescription for any of the pills in his boot, so the State charged him with five counts of possession——one for each category of drug and dosage. The State also paired each possession charge with a corresponding felony

bail-jumping charge.[3] Consequently, the list of charges against Mr. Brantner comprised:[4]

> (1) Possession of oxycodone (20mg), a Schedule II narcotic substance, without a valid prescription, contrary to Wis. Stat. § 961.41(3g)(am);

> (2) Felony bail jumping contrary to Wis. Stat. § 946.49(1)(b) for possessing oxycodone 20mg;

> (3) Possession of oxycodone (5mg), a Schedule II narcotic substance, without a valid prescription, contrary to Wis. Stat. § 961.41(3g)(am);

> (4) Felony bail jumping contrary to Wis. Stat. § 946.49(1)(b) for possessing oxycodone 5mg;

> (5) Possession of hydrocodone, a Schedule II narcotic substance, without a valid prescription, contrary to Wis. Stat. § 961.41(3g)(am);

> (6) Felony bail jumping contrary to Wis. Stat. § 946.49(1)(b) for possessing hydrocodone;

> (7) Possession of zolpidem, a controlled substance, without a valid prescription, contrary to Wis. Stat. § 961.41(3g)(b);

> (8) Felony bail jumping contrary to Wis. Stat. § 946.49(1)(b) for possessing zolpidem;

> (9) Possession of cyclobenzaprine, a prescription drug, contrary to Wis. Stat. § 450.11(7)(h); and

---

[3] One of the conditions of Mr. Brantner's bond in the Kenosha County felon-in-possession case was that he commit no new crimes.

[4] Initially, the charges against Mr. Brantner on counts one, three, and five also included penalty enhancers pursuant to Wis. Stat. § 961.495 (2017-18) for possession of a controlled substance within 1000 feet of the Fond du Lac County jail; however, the State voluntarily dismissed all of the penalty enhancers prior to voir dire.

(10) Felony bail jumping contrary to Wis. Stat. § 946.49(1)(b) for possessing cyclobenzaprine.[5]

¶6 The jury found Mr. Brantner guilty on all counts and he received his sentence in due course. He subsequently filed a postconviction motion in which he claimed that venue did not lie in Fond du Lac County and that the two charges for possessing oxycodone (counts one and three) were multiplicitous. The court denied Mr. Brantner's motion, and the court of appeals summarily affirmed. We granted Mr. Brantner's petition for review and now affirm the court of appeals with respect to venue, but reverse with respect to counts one and three because they are multiplicitous.

## II. STANDARD OF REVIEW

¶7 Although venue is not an element of a crime, the State must nonetheless establish it beyond a reasonable doubt. State v. Dombrowski, 44 Wis. 2d 486, 501-02, 171 N.W.2d 349 (1969). We review venue challenges for sufficiency of evidence, so "[w]e will not reverse a conviction based upon the State's failure to establish venue unless the evidence, viewed most favorably to the state and the conviction, is so insufficient that there is no basis upon which a trier of fact could determine venue beyond a reasonable doubt." State v. Corey J.G., 215 Wis. 2d 395, 407-08, 572 N.W.2d 845 (1998). Whether such a basis exists is a question of law we review independently of the court of appeals. State v. Smith, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410 ("The

_____

[5] Counts one, three, and five are Class I felonies; the bail jumping charges are Class H felonies; and counts seven and nine are misdemeanors.

question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law, subject to our de novo review.").

¶8 Whether two or more charges are multiplicitous is a question of law subject to our independent review. State v. Patterson, 2010 WI 130, ¶12, 329 Wis. 2d 599, 790 N.W.2d 909; State v. Multaler, 2002 WI 35, ¶52, 252 Wis. 2d 54, 643 N.W.2d 437.

## III. ANALYSIS

¶9 Mr. Brantner challenges his conviction for two reasons. First, he says that he should not have been tried in Fond du Lac County because his arrest in Kenosha County terminated, as a matter of law, his ability to possess any contraband on his person. Therefore, he concludes, he had a right to have a jury hear his case in Kenosha County, the last geographical location he says he possessed the pills in his boot. Second, he claims the State may not charge him with two separate charges for possessing oxycodone simply because the pills contained different amounts of the narcotic. We conclude that Fond du Lac County was a proper venue for the case, but that the oxycodone-related possession charges were multiplicitous.

## A. Venue

¶10 Mr. Brantner says he is entitled to trial in Kenosha County because, generally speaking, the State must try a defendant in the county in which the crime occurred. Wis. Stat. § 971.19(1) ("Criminal actions shall be tried in the county where the crime was committed, except as otherwise provided."). Answering Mr. Brantner's argument requires us to consult the criminal statutes

6

defining the crimes' elements so that we may identify where they were fulfilled. As relevant here, possession of controlled substances is unlawful pursuant to Wis. Stat. § 961.41(3g), which says:

> No person may possess or attempt to possess a controlled substance or a controlled substance analog unless the person obtains the substance or the analog directly from, or pursuant to a valid prescription or order of, a practitioner who is acting in the course of his or her professional practice, or unless the person is otherwise authorized by this chapter to possess the substance or analog.[6]

The unauthorized possession of prescription drugs is unlawful according to Wis. Stat. § 450.11(7)(h), which says: "Except as provided in sub. (1i)(b), no person may possess a prescription

---

[6] The penalty for possessing a Schedule II narcotic drug, such as oxycodone, is provided by Wis. Stat. § 961.41(3g)(am):

> Schedule I and II Narcotic Drugs. If a person possesses or attempts to possess a controlled substance included in schedule I or II which is a narcotic drug, or a controlled substance analog of a controlled substance included in schedule I or II which is a narcotic drug, the person is guilty of a class I felony.

The penalty for possessing non-scheduled controlled substances is provided by Wis. Stat. § 961.41(3g)(b):

> Other drugs generally. Except as provided in pars. (c) to (g), if the person possesses or attempts to possess a controlled substance or controlled substance analog, other than a controlled substance included in schedule I or II that is a narcotic drug or a controlled substance analog of a controlled substance included in schedule I or II that is a narcotic drug, the person is guilty of a misdemeanor, punishable under s. 939.61.

7

drug unless the prescription drug is obtained in compliance with this section."[7]

¶11 The crimes with which Mr. Brantner was charged were obviously possessory in nature, which means he committed the crimes where he "possessed" the pills in his boot. Wis. Stat. § 961.41(3g) ("No person may possess . . . ."); Wis. Stat. § 450.11(7)(h) ("[N]o person may possess . . . ."). So we must discern the meaning of the term "possess" within the context of §§ 961.41(3g) and 450.11(7)(h). The answer to that question, as applied to the facts of this case, will tell us where venue lies.

¶12 This is not the first time we have had cause to explore the meaning of "possess" in our statutes. In Schwartz v. State, 192 Wis. 414, 212 N.W. 664 (1927), the State claimed the defendant unlawfully possessed intoxicating liquor by virtue of its mere presence in his business premises. We said that "[i]t is perfectly plain that the possession of liquor which is made unlawful is the possession under some claim of right, control, or dominion with knowledge of the facts." Id. at 418. And in State v. Peete, 185 Wis. 2d 4, 517 N.W.2d 149 (1994), we recognized that "the Wisconsin criminal jury instructions provide a standard definition for the term 'possession[,]'" and that "the term 'possession' has

---

[7] Subsection (1i)(b), which addresses opioid antagonists, is not relevant to this case. Wis. Stat. § 450.11(1i)(b). And Mr. Brantner does not claim he obtained the cyclobenzaprine in compliance with § 450.11.

8

a consistent, established meaning throughout the Wisconsin criminal statutes . . . ." Id. at 15-16.[8]

¶13 Both parties recommended Wis JI——Criminal 6030 (2016) to us as an appropriate explanation of this "consistent, established meaning." This instruction describes two senses in which we may understand the term "possession." In the first sense, "possessed" means "the defendant knowingly had actual physical control of a substance." Id. In the second sense, a "substance is (also) in a person's possession if it is in an area over which the person has control and the person intends to exercise control over the substance." Id.

¶14 We can glean from Schwartz and Wis JI——Criminal 6030, therefore, that "possessing" something requires both knowledge and control. Here, it is the "control" component of possession with which Mr. Brantner takes exception. The instruction's first definition of control contemplates the ability to kinetically influence the object in question. The instruction expresses this idea as "actual physical control," which Black's Law Dictionary defines as "[d]irect bodily power over something, esp. a vehicle." Actual Physical Control, Black's Law Dictionary (11th ed. 2019).

¶15 The second "control" test does not require the ability to physically manipulate the object directly. Instead, it reflects

---

[8] State v. Peete, 185 Wis. 2d 4, 517 N.W.2d 149 (1994), addressed Wis JI——Criminal 920 (2000), the general "possession" instruction. This case, of course, focuses on Wis JI——Criminal 6030 (2016), which is the jury instruction specific to Wis. Stat. § 961.41(3g). However, the definition is the same in each instance, which the comments to Wis JI——Criminal 6030 acknowledge.

the defendant's ability to exercise power over the object indirectly. In the words of the jury instruction, possession occurs when the object is in an area over which the defendant has control, and he intends to exercise that control. "Control" is a common and frequently used word. There is nothing technical or specialized about it, and so we look to the dictionary for a common, ordinary definition.[9] Turning to Webster's Third New International Dictionary, we find two particularly helpful definitions. First, Webster's says "control" means "to exercise restraining or directing influence over." Control, Webster's Third New International Dictionary (496 (1986) (definition 4(a)(1))). It also provides that "control" means "to have power over." Id. (definition 4(a)(2)). Similarly, The Oxford English Dictionary, as relevant here, offers the following definitions of "control": (1) "The fact or power of directing and regulating the actions of . . . things; direction, management; command[;] and (2) "To exercise power or authority over; to determine the behavior or action of, to direct or command; to regulate or govern." Control, The Oxford English Dictionary (definitions 2.a. (noun) and 3.a. (verb), respectively). Likewise, Black's Law Dictionary defines "control," in relevant part, as meaning "[t]o exercise power or influence over." Control, Black's Law Dictionary (11th ed. 2019). The consistent principle linking all of these definitions is that

---

[9] See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.").

10

an individual may control an object without directly and personally affecting it physically. Instead, one may control the object through the exercise of authority, direction, or command. We will refer to this type of control as "indirect power."

¶16 The sum of this definitional work is that, within the meaning of Schwartz and Wis JI——Criminal 6030, Mr. Brantner possessed the pills in his boot if he knew they were there and he either: (1) "had actual physical control" (that is, "direct bodily power") over them; or (2) they were "in an area over which [he] ha[d] control and [he] intend[ed] to exercise control over" them (that is, he had "indirect power" over the pills). If those elements coincided in Fond du Lac County, then venue was proper.

¶17 According to Mr. Brantner, they did not coincide. He says he "lost possession of the pills when he was taken into custody in Kenosha County because that is when he lost control of the pills."[10] Specifically, he says his arrest meant he could no longer "ingest, sell, destroy or otherwise dispossess himself of [the pills]. He could not do anything except leave them right where they were." He concludes that under these circumstances, "[w]hen a government bears down on an individual with such heavy force, the individual loses control of any substances on his person as a matter of law." That an individual should cease to control——and consequently cease to possess——everything on his person upon arrest is a surprising proposition. That has never been the law

_____

[10] Mr. Brantner does not challenge the knowledge component of possession, and so we need not address it here.

11

in Wisconsin, and our courts regularly uphold convictions in which police discover contraband after arresting the person who possesses it. See, e.g., State v. Delap, 2018 WI 64, 382 Wis. 2d 92, 913 N.W.2d 175 (affirming judgment of conviction for, inter alia, possession of drug paraphernalia discovered in search after arrest); State v. Dearborn, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97 (defendant convicted based on drugs found in his vehicle after arrest); State v. Stewart, 2011 WI App 152, 337 Wis. 2d 618, 807 N.W.2d 15 (affirming denial of motion to suppress cocaine discovered in search of trunk after arrest and thereby upholding conviction for possession of cocaine with intent to deliver); State v. Smiter, 2011 WI App 15, 331 Wis. 2d 431, 793 N.W.2d 920 (affirming judgment of conviction for possession of cocaine with intent to deliver stemming from discovery of cocaine pursuant to a vehicle search after defendant's arrest for possession of marijuana).

¶18 But the deeper problem with Mr. Brantner's argument is that it misses the point of our "possession" jurisprudence. In this case, one of the following must be the possessor of the pills: (1) Mr. Brantner; (2) the sheriff's deputies; or (3) no one. The purpose of our analysis is not to make metaphysical distinctions, but merely to distinguish between these three possibilities. We can rule out the deputies as the possessors pretty easily——they did not know the pills existed until Mr. Brantner handed them his boot, which means the knowledge element of possession was

12

missing.[11]  Mr. Brantner rules himself out as the possessor because he claims he lacked control over them.  So he says we must conclude that nobody possessed the pills.  The pills, that is to say, that were <u>in his boot</u>.  Not only is such a conclusion counterintuitive, it does not logically follow from the definition of "possession."  Here is why.

¶19  As we observed above, Mr. Brantner contests only the "control" component of possession——he admits he knew the pills were in his boot.  The evidence presented in his trial, however, leaves no doubt about his control of the pills in Fond du Lac County.  He took off his right boot with no difficulties during the booking process, but claimed a muscle spasm kept him from removing his drug-laden boot.  Finding no reprieve in his delaying tactics, he eventually removed the boot and handed it to the sheriff's deputy in the processing room.  So Mr. Brantner exercised "direct bodily power" over the pills by first delaying their conveyance to the deputy and then physically handing them over.  In his brief, Mr. Brantner largely concedes that this is evidence of control over the pills:

> If th[is] situation had unfolded inside a friend's living room, with no law enforcement involvement whatsoever, then Brantner clearly would be exercising actual physical control over the pills by removing his boot and handing it to his friend.  Handing an object to

---

[11] We base our analysis on the understanding that the detectives did not know of the pills in Mr. Brantner's boot before they transported him to Fond du Lac County, and we express no opinion on how this case would resolve had they known of them while still in Kenosha County.

> someone is precisely the type of act that "actual physical control" refers to in ordinary circumstances.

We agree that this is precisely the type of act that exemplifies actual physical control. Mr. Brantner, however, says this does not count in this case because of the extraordinary circumstances in which he handed over the boot. In Mr. Brantner's telling, those circumstances relieved him of possession of the pills as a matter of law because he was handing officials the evidence necessary to arrest him for the crimes with which the State eventually charged him. But Mr. Brantner never explained how his "extraordinary circumstances" proposition could negate the physical control he actually exerted over the drug-containing boot. If we were to credit his position, we would have to conclude that the boot somehow made its way from Mr. Brantner to the sheriff's deputy with no human intervention. The laws of physics, as we presently understand them, do not allow for such a phenomenon.

¶20 Mr. Brantner also argues the evidence was insufficient to prove the alternative method of establishing control, to wit, through the exercise of indirect power over the pills. Upon arrest in Kenosha County, he says, he lost his ability to direct the disposition of the pills. He says the State's argument that he "maintained possession of the pills solely by manifesting an intent to exercise control over them" is nonsensical: "The State's claim that Brantner maintained physical control over the pills through the power of thought is odd. Brantner is unable to find any authority from any jurisdiction holding that an individual

14

maintained constructive possession of an item on his person without maintaining actual physical possession [of] it."

¶21 Mr. Brantner need not go far to find the authority he believes does not exist. He already acknowledged that Wis JI——Criminal 6030 (which he recommended to us) provides a second means of establishing the control element of possession. Under Schwartz and this jury instruction, a factfinder could conclude that Mr. Brantner still controlled the pills after his arrest if he could have exerted indirect power over them through the exercise of authority, direction, or command. If he had wanted to avoid venue in Fond du Lac County, he could have asked the detectives (while they were all still in Kenosha County) to remove his boot because he no longer wished to have on his person the contraband it contained. The detectives surely would have been willing to assist him in accomplishing that goal, and in doing so they would have demonstrated that Mr. Brantner had indirect power over the pills in his boot. Mr. Brantner dismisses this as a Hobson's choice: "If Brantner was required to tell the officers about the pills to terminate his possession of them, then Brantner was effectively required to choose between the protections of the right to remain silent and the right to venue." But that is not true at all. Mr. Brantner has the right to proper venue, not venue in Kenosha County come what may. He chose to maintain the secrecy of the pills, which inevitably led to their presence in Fond du Lac County. And upon arrival in Fond du Lac County, he could have made the request he chose not to make in Kenosha County. The fact that he chose to

remain silent does not mean he did not have indirect power over the pills, it just means he decided not to exercise it.

¶22 We conclude the evidence was such that the jury could determine that Mr. Brantner possessed the pills in Fond du Lac County beyond a reasonable doubt, which made venue in that county proper. Mr. Brantner admittedly knew of the pills' presence in his boot. And he exercised direct physical power over them when he handed his drug-laden boot to the officials during the booking process. He also had indirect power over the pills even after the arrest because he could have requested the detective's assistance in ridding himself of the contraband's presence. The fact that he chose not to exercise that indirect power does not mean he lacked control over the pills. For these reasons, we affirm the court of appeals with respect to the venue issue.[12]

## B. Multiplicity

¶23 The State charged Mr. Brantner with (amongst other offenses) possession of 20mg oxycodone pills (Count 1), and 5mg oxycodone pills (Count 3), both in violation of Wis. Stat. § 961.41(3g)(am). Mr. Brantner says these counts are

_____

[12] Mr. Brantner also says the Wisconsin and United States Constitutions guaranteed to him the right to a trial in Kenosha County, not Fond du Lac County. See, e.g., Wis. Const. art. I, § 7 ("In all criminal prosecutions the accused shall enjoy the right to . . . a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law."). But he also recognized, as he must, that these rights were dependent on the location at which he committed the offenses. As demonstrated above, he committed them in both Kenosha and Fond du Lac Counties. Consequently, venue in Fond du Lac County was consistent with his asserted constitutional rights.

16

multiplicitous because § 961.41(3g)(am) proscribes possession of this drug without regard to the dosage of the pills. We agree.

¶24 Claims are multiplicitous when the State charges a defendant more than once for the same offense. State v. Ziegler, 2012 WI 73, ¶59, 342 Wis. 2d 256, 816 N.W.2d 238; State v. Rabe, 96 Wis. 2d 48, 61, 291 N.W.2d 809 (1980) ("Multiplicity arises where the defendant is charged in more than one count for a single offense."). Such charges violate our state and federal constitutions because they place the defendant in jeopardy of multiple convictions for the same offense. Ziegler, 342 Wis. 2d 256, ¶59 ("The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and its parallel provision of the Wisconsin Constitution, Article I, Section 8(1), prohibit multiple punishments for the same offense."). Charges are not multiplicitous, however, when the statutes "authorize cumulative punishments for the same offense." State v. Davison, 2003 WI 89, ¶¶36-37, 263 Wis. 2d 145, 666 N.W.2d 1 ("In situations where the legislature intends to authorize cumulative punishments for the same offense, we no longer say that the charges are 'multiplicitous' or that they violate double jeopardy. Use of the term 'multiplicitous' should be limited to situations in which the legislature has not authorized multiple charges and cumulative punishments.").

¶25 "We review multiplicity claims according to a well-established two-pronged methodology." Ziegler, 342 Wis. 2d 256, ¶60. First, we employ the "elements-only" test to determine whether the offenses are identical in both law and fact. Id.,

17

(citing Blockburger v. United States, 284 U.S. 299, 304 (1932)). The result of this step determines whether we will presume, in the second step of the analysis, that the statutes provide for cumulative punishment. Davison, 263 Wis. 2d 145, ¶¶43-44. If the offenses are identical in law and fact, we presume "that the legislature did not intend to permit multiple punishments." Patterson, 329 Wis. 2d 599, ¶15. "The State may rebut that presumption only by a clear indication of contrary legislative intent." Ziegler, 342 Wis. 2d 256, ¶61. If the offenses differ in law or fact, then they are not the "same" for double jeopardy purposes, and we therefore presume that the statutes allow for cumulative punishment. Patterson, 329 Wis. 2d 599, ¶15. The defendant can overcome the presumption if he can prove that, notwithstanding the separate offenses, "the legislature did not intend to authorize cumulative punishments." Ziegler, 342 Wis. 2d 256, ¶62. If it did not, then there has been a due process violation as opposed to a double jeopardy violation. Id.

### 1. The "Elements-Only" Analysis

¶26 Mr. Brantner says the offenses described in Counts 1 and 3 of the State's Complaint are the same both in law and in fact because they both charge him with possessing oxycodone contrary to Wis. Stat. § 961.41(3g)(am). Offenses are identical in law "if one offense does not require proof of any fact in addition to those which must be proved for the other offense." Ziegler, 342 Wis. 2d 256, ¶60. They are identical in fact unless they are "separated in time or are of a significantly different nature." State v. Eisch, 96 Wis. 2d 25, 31, 291 N.W.2d 800 (1980). To be

18

"separate in time" means that "there was sufficient time for reflection between the acts such that the defendant re-committed himself to the criminal conduct." Multaler, 252 Wis. 2d 54, ¶56. Charges are "'different in nature' even when they are the same types of acts as long as each required 'a new volitional departure in the defendant's course of conduct.'" Id., ¶57.

¶27 We begin with assessing whether the offenses described in Counts 1 and 3, both of which charged Mr. Brantner with violating Wis. Stat. § 961.41(3g)(am), are identical in law. This statute says:

> No person may possess or attempt to possess a controlled substance or a controlled substance analog unless the person obtains the substance or the analog directly from, or pursuant to a valid prescription or order of, a practitioner who is acting in the course of his or her professional practice, or unless the person is otherwise authorized by this chapter to possess the substance or the analog.

§ 961.41(3g). The statute goes on to distinguish between different types of controlled substances to determine the gravity of the offense. According to Wis. Stat. § 961.16(2)(a)11., the pills referenced in both Counts 1 and 3 were Schedule II narcotic drugs, which comprise (inter alia), "[a]ny material, compound, mixture or preparation which contains any quantity" of oxycodone. (Emphasis added.) Possession of Schedule II narcotic drugs (such as oxycodone) is a Class I felony:

> (am) Schedule I and II narcotic drugs. If a person possesses or attempts to possess a controlled substance included in schedule I or II which is a narcotic drug, or a controlled substance analog of a controlled substance included in schedule I or II which is a narcotic drug, the person is guilty of a Class I felony.

19

§ 961.41(3g)(am). Because our statutes proscribe possession of pills without regard to the amount of oxycodone they might contain, there is no legal distinction between possessing a pill containing 20mg of oxycodone as opposed to one containing only 5mg of oxycodone. That, however, is the only difference between Counts 1 and 3. As a result, neither count "require[d] proof of any fact in addition to those which must be proved for the other offense." See Ziegler, 342 Wis. 2d 256, ¶60. We must therefore conclude that the offenses described in Counts 1 and 3 are identical in law.

¶28 The State says Counts 1 and 3 are different in fact because they were different in both time and nature. It says they are different in nature because it "had to prove that Brantner committed two different volitional acts of possession by obtaining two different types of oxycodone pills from different sources, showing that each possession required 'a new volitional departure' by Brantner." See, e.g., Multaler, 252 Wis. 2d 54, ¶57 (explaining that charges are "'different in nature' . . . as long as each required 'a new volitional departure in the defendant's course of conduct.'"). The counts are different in time, the State says, because "Brantner either had to have taken possession of the 20mg oxycodone pills at some point when Michael[13] had a prescription for 20mg oxycodone pills, or obtained them from somewhere else." Either way, the State says, "Brantner had to complete the act of

---

[13] Michael is Mr. Brantner's brother, and it is the State's theory that Mr. Brantner stole the pills from him.

taking possession of each type of pill separately, therefore those acts were separate in time . . . ." <u>See, e.g.</u>, <u>Multaler</u>, 252 Wis. 2d 54, ¶56 (explaining that offenses are different in time if "there was sufficient time for reflection between the acts such that the defendant re-committed himself to the criminal conduct.").

¶29 Although the State is correct about what it had to prove, it is not possible to reconcile its conclusion with the evidence of record.[14] The evidence certainly shows that Mr. Brantner possessed 20mg and 5mg oxycodone pills. But nothing in the record directly establishes that Mr. Brantner obtained the different dosages via "two different volitional acts" or temporally separated acts of acquisition. To remedy this dearth of evidence, the State proposed that we conclude the offenses were different in both nature and time through necessary inference from the evidence of record.

¶30 The State's inferential reasoning cannot, by itself, connect its premises to its conclusions. Instead, its argument outsourced most of the evidentiary work to some pretty hefty

---

[14] The record says very little about how Mr. Brantner obtained the pills. At trial, the jury heard a recording of a phone call between Mr. Brantner and his significant other in which Mr. Brantner commented that he had gotten the pills from his brother, Michael, and that he'd had the pills since 2010. Detective Vergos testified that he attempted to ascertain the source of the pills by searching Michael's home. He testified that he discovered prescription pill bottles that matched four of the five types of pills and dosages found in Mr. Brantner's boot, but that he found no evidence that Michael had a prescription for 20mg oxycodone pills.

assumptions.  The foundational assumption is that Mr. Brantner could not have obtained the 20mg and 5mg pills at the same time. It derives this assumption from one of two alternative scenarios, both of which rely on their own chain of assumptions.  The first scenario started with the assumption that Mr. Brantner obtained all of the oxycodone pills from his brother's house.  The State further assumed that his brother never had both 20mg and 5mg pills in the house at the same time.  This assumption, however, required supporting assumptions of its own.  So it assumed that the brother obtained both the 20mg and 5mg pills from valid prescriptions.  It then observed that, when Mr. Brantner was arrested, his brother had a prescription for only the 5mg oxycodone pills.  From this the State assumed that the 20mg pills must have come from a prior (and now superseded) prescription.  The State had to also assume that the brother did not fill the prescription for the 5mg pills until he had used all of the 20mg pills from the assumed previous prescription.  If we stack up all of these assumptions, the State says, we reach the conclusion that Mr. Brantner's brother never had 20mg and 5mg pills in the house at the same time.  And that necessarily means Mr. Brantner had to have acquired the pills at different times.

¶31  Alternatively, the State allows for the possibility that the 20mg and 5mg pills actually were in the brother's house at the same time.  In this scenario, the State assumes that the brother assiduously kept his 20mg and 5mg pills separated into their respective, closed containers.  To obtain both types of pills, therefore, Mr. Brantner would have had to open two separate

22

containers to access the drugs, thereby introducing a temporal distinction (however small) between the acquisitions.

¶32 The State needs all of these assumptions (or their alternatives) to be true to operationalize its "necessary inference" argument. But one need not be a cynic to recognize that the State's assumptions describe a world that is substantially neater and more precise than the one in which we live. It is altogether possible that each of the State's assumptions (or its alternatives) reflect the process by which Mr. Brantner actually obtained the 20mg and 5mg oxycodone pills. But there is nothing to say that any of the assumptions is <u>necessarily</u> true. For example, Mr. Brantner's brother could have obtained the 20mg pills without a prescription, making it possible for him to have the 20mg and 5mg pills in the house at the same time. Or he may have had prescriptions for both 20mg and 5mg pills that overlapped; or he may not have finished the 20mg pills before filling the prescription for the 5mg pills, either of which circumstance would make it possible for both dosages to be present in the house at the same time. And nothing says that, assuming Mr. Brantner's brother had 20mg and 5mg pills in the house at the same time, he would keep them carefully separated into different containers. And even if he did, nothing says Mr. Brantner did not just swipe the containers at the same time and only later emptied them into a bag for transport in his boot.

¶33 All of this means that, according to the record before us, there is nothing to suggest that Mr. Brantner must have obtained the 20mg and 5mg pills separately. If Mr. Brantner

23

obtained all the oxycodone pills simultaneously, it is not possible for there to have been different volitional departures in his course of conduct (meaning the offenses are not "different in nature"). And simultaneous acquisition also necessarily means they cannot be "different in time." Nothing in the record suggests that the State's assumptions describe the method by which Mr. Brantner obtained the oxycodone pills. So, unless we credit those assumptions (and we do not), the offenses described in Counts 1 and 3 are the same in fact.[15]

¶34 We conclude that, pursuant to the Blockburger elements-only test, the offenses described in Counts 1 and 3 are identical in law and fact.

### 2. Cumulative Punishment

¶35 Our resolution of the elements-only test means we presume our statutes do not permit multiple punishments for the offenses described in Counts 1 and 3. See Patterson, 329 Wis. 2d 599, ¶15. However, we allow the State to "rebut that presumption . . . by a clear indication of contrary legislative intent." Ziegler, 342 Wis. 2d 256, ¶61; see also Whalen v. United

---

[15] It is worth noting that there is no easily discernible limiting principle to the State's inferential assumptions. For example, the State's reasoning would appear to support charging Mr. Brantner with 37 counts of possessing oxycodone pills—one count for each of the 35 20mg pills, and one count for each of the 5mg pills. The State could simply postulate that Mr. Brantner took one pill from his brother each day to reduce the chances of discovery, thereby resulting in an assumed total of 37 individual volitional acts. The State's reasoning would require no evidence that Mr. Brantner obtained the pills like this, only that he could have obtained them in that manner.

24

_States_, 445 U.S. 684, 692 (1980) ("Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.").

¶36 In this case, however, we need not perform this analysis. The State's argument with respect to this aspect of the multiplicity rubric anticipated success in demonstrating that the offenses described in Counts 1 and 3 are different in fact. If it had succeeded, of course, Mr. Brantner would have borne the burden of rebutting the presumption that the statutes allow for multiple punishments. So the State focused its argument entirely on explaining why Mr. Brantner could not rebut the presumption. As it turns out, the State did not succeed in proving the offenses are different in fact, and its brief did not provide for such a contingency. So Mr. Brantner enjoys the presumption that the statutes do not allow for multiple punishments for the same offense, and the State has offered no argument against that presumption. We will not develop an argument where the State has chosen not to. _See_ _Clean Wis., Inc. v. Pub. Serv. Comm'n of Wis._, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."). Therefore, we conclude that the presumption remains and, consequently, that Counts 1 and 3 are multiplicitous.[16]

---

[16] The State concedes "that if one of the oxycodone charges is vacated [as multiplicitous], then the corresponding bail jumping charge must be vacated as well." The parties did not fully address this issue before the court, and we will therefore rely on the State's concession in this case rather than deciding the issue.

## C. Resentencing

¶37 The circuit court fashioned a complex sentence based on the ten charges for which the jury returned a guilty verdict. In particular, the court sentenced Counts 1 and 3 differently, despite both having been oxycodone-related charges, because it believed it was "more logical and fair to consider one [of the two oxycodone charges]——Count 1 for prison." However, because Counts 1 and 3 are multiplicitous, Mr. Brantner argues that "[t]he appropriate remedy . . . is resentencing on all counts." The State says the appropriate remedy is to remand the matter to the circuit court to allow it to determine whether resentencing is appropriate. We agree with the State.

¶38 "[W]hen a defendant is convicted of and sentenced for multiple offenses and one conviction and sentence is vacated because it was held to be multiplicitous, the validity of all sentences is implicated and resentencing on the remaining convictions is permissible." State v. Sinks, 168 Wis. 2d 245, 255, 483 N.W.2d 286 (Ct. App. 1992) (citing State v. Martin, 121 Wis. 2d 670, 672-73, 360 N.W.2d 43 (1985)). Accordingly, "the trial court has the inherent power to resentence, but it need not exercise that power." Sinks, 168 Wis. 2d at 255. We therefore remand the matter to the circuit court to exercise its discretion in determining whether resentencing is appropriate in light of our conclusion that Counts 1 and 3 are multiplicitous.

## IV. CONCLUSION

¶39 We affirm the court of appeals with respect to its conclusion that venue in Fond du Lac County was proper. We reverse

26

the court of appeals with respect to its conclusion that Counts 1 and 3 were not multiplicitous and remand to the circuit court for further proceedings consistent with this opinion.

¶40 *By the Court.*—The decision of the court of appeals is affirmed in part, reversed and part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶41  BRIAN K. HAGEDORN, J., did not participate.

¶42 PATIENCE DRAKE ROGGENSACK, C.J. *(concurring).* Part of our obligation as supreme court justices is to take complicated legal issues and decide them in a way that simplifies and explains them. I write in concurrence because the majority opinion does the opposite. It takes a simple issue, possession, and makes it complicated. It also has the potential to confuse the meaning of possession, which is employed throughout Wisconsin's criminal code. Therefore, although I agree that possession was shown at trial, I join none of the majority's discussion of possession. I do, however, join the majority opinion's discussion and decision on the double jeopardy issue. Accordingly, I respectfully concur.

## I.  BACKGROUND

¶43 On March 27, 2015, Fond du Lac County Sheriff's Office detectives took Dennis Brantner into custody on an arrest warrant as he was leaving the Kenosha County Courthouse. Upon arresting Brantner, Detective Vergos asked Brantner if he had anything on him that the detective should know about before he patted him down for the detectives' safety. Brantner did not disclose 54 pills, controlled substances, which he had placed in his left boot.

¶44 Brantner was handcuffed to a belly belt for the trip to Fond du Lac County. When the detectives and Brantner arrived at the Fond du Lac County Jail, Brantner said he had cramps in his legs. He then asked to go to the bathroom. His handcuffs were removed, and Detective Vergos took him to the bathroom. Detective Vergos remained with Brantner until he was finished. Detective Vergos then took Brantner to the booking area where Brantner was

told to remove his outer shirt and boots. Brantner took off his outer shirt, but said that he had cramps in his legs and indicated difficulty in removing his left boot. Detective Vergos offered to help him remove his boot. Brantner refused the detective's help and removed both boots himself. He gave them to the booking officer, who found a baggie containing 54 pills inside Brantner's left boot.

¶45 At trial, Detective Vergos testified and a video recording of Brantner's intake was played for the jury. The circuit court also admitted into evidence and played audios of Brantner's jail phone calls, where he admitted that he got the pills from his brother, Michael.

¶46 The State charged Brantner with three counts of possession of narcotic drugs and two misdemeanors for the other pills in the baggie. Before trial, Brantner contested venue in Fond du Lac County, asserting that he did not possess the drugs in Fond du Lac County. He asserted that because he was handcuffed to a belly belt during his transport to Fond du Lac County, he could not control the pills in his boot and therefore, he did not possess them. He contends that the last time he possessed them was in Kenosha County before he was handcuffed.

¶47 At trial, the circuit court gave the following jury instruction on the offense of possession of a controlled substance:

> [T]he Wisconsin Statutes make[] it a crime to possess a controlled substance.
>
> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present.

2

One, the defendant possessed a substance oxycodone, "OP" "20" 20 milligrams.

"Possessed" means that the defendant knowingly had actual physical control of a substance.

A substance is also in a person's possession if it is in an area over which the person has control and the person intends to exercise control over the substance.

. . . .

Two, the substance was oxycodone. Oxycodone is a controlled substance whose possession is prohibited by law, without a valid prescription.

Three, the defendant knew or believed that the substance was oxycodone, a controlled substance, and the defendant did not have a valid prescription.

You cannot look into a person's mind to determine knowledge or belief. Knowledge or belief must be found, if found at all, from the defendant's acts, words, and statements, if any, and from the facts and circumstances in this case bearing upon knowledge or belief.

A criminal case is required to be tried in the county where the crime was committed.

If you are satisfied beyond a reasonable doubt that defendant committed the offense charged in Fond du Lac County, you should find the defendant guilty.

The definition of possession in the instructions given at trial is word-for-word consistent with Criminal Jury Instruction 920, which is employed to define possession throughout the criminal code: "'Possession' means that the defendant knowingly had actual physical control of the item." Wis JI——Criminal 920 (2000).

## II. DISCUSSION

¶48 Brantner's arguments about possession are focused on trying to avoid venue in Fond du Lac County. Sufficiency of the evidence is the standard used for deciding whether the State proved facts sufficient to support venue in Fond du Lac County. State v.

3

<u>Corey J.G.</u>, 215 Wis. 2d 395, 407-08, 572 N.W.2d 845 (1998). An appellate court "will not reverse a conviction based on the failure of the State to establish venue unless the evidence, viewed most favorably to the State and the conviction, is so insufficient that there is no basis upon which a trier of fact could determine venue beyond a reasonable doubt." <u>State v. Swinson</u>, 2003 WI App 45, ¶19, 261 Wis. 2d 633, 660 N.W.2d 12.

¶49 Brantner grounds his venue argument in the contention that he did not possess the pills in Fond du Lac County because he could not reach them while he was handcuffed. His argument misses the mark for several reasons. First, even if one were to buy Brantner's argument that he could not possess the pills while handcuffed, which I do not, handcuffs were removed when he got to the Fond du Lac County Jail. His antics about leg cramps and difficulty removing his left boot demonstrate physical control of the pills that he knew were in his boot. Furthermore, it was Brantner who handed his left boot containing the pills to the booking clerk.

¶50 Second, Brantner has never objected to the correctness of those instructions—either at trial or in his petition for review. Nor does he bring a claim of ineffective assistance based on an erroneous jury instruction. Therefore, before us, the instructions on possession, set forth above, are uncontroverted. <u>State v. Shea</u>, 221 Wis. 2d 418, 430, 585 N.W.2d 662 (1998). Third, the jury made a finding of possession consistent with the circuit court's instructions on possession, i.e., that Brantner knowingly had actual physical control of the pills. It was uncontroverted

that the pills were in Brantner's boot, pills that he obtained from his brother, Michael. Pills in a boot are not different from the facts in State v. Harris, 190 Wis. 2d 718, 721, 528 N.W.2d 7 (Ct. App. 1994), where Harris was charged in Milwaukee County with possession when cocaine was discovered in his shoe during a probation search.

¶51 Fourth, possession has "a consistent, established meaning throughout the Wisconsin criminal statutes." State v. Peete, 185 Wis. 2d 4, 16, 517 N.W.2d 149 (1994) (giving essentially the same instruction in regard to possession as the circuit court gave here). There was sufficient evidence for a jury reasonably to find that Brantner knowingly had actual physical control of the pills in Fond du Lac County. That he also knowingly had actual physical control of the pills in Kenosha County does not diminish the evidence of possession in Fond du Lac County. As Wis. Stat. § 971.19(2) provides: "Where 2 or more acts are requisite to the commission of any offense, the trial may be in any county in which any of such acts occurred." State v. Elverman, 2015 WI App 91, ¶38, 366 Wis. 2d 169, 873 N.W.2d 528.

¶52 Finally, Brantner knowingly had actual physical control of the pills in his boot in Fond du Lac County, which boot was on his foot until he took it off and handed it to the booking agent. Brantner's ruse that he was having leg cramps and therefore had difficulty removing his boot only goes to confirm that he knew the pills were in his boot when he was in Fond du Lac County, and he was exerting control over them so that he would not be required to hand them over to the booking agent. The uncontested facts

5

presented at trial were sufficient evidence for a jury to find that Brantner "knowingly had actual physical control" of the pills until he gave his boot to the officer at the Fond du Lac County Jail.

### III. CONCLUSION

¶53 The majority opinion takes a simple issue, possession, and makes it complicated. The majority opinion also has the potential to confuse the meaning of possession, which is employed throughout Wisconsin's criminal code. Therefore, although I agree that possession was shown at trial, I join none of the majority's discussion of possession. I do, however, join the majority opinion's discussion and decision on the double jeopardy issue. Accordingly, I respectfully concur.

¶54 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence.