STATE of Wisconsin, Plaintiff-Respondent,

v.

Little A. STEWART, Defendant-Appellant.†

Court of Appeals

*No. 2010AP2553–CR. Submitted on briefs August 31, 2011.*
*—Decided October 12, 2011.*

2011 WI App 152

(Also reported in 807 N.W.2d 15.)

† Petition for review denied 2-23-12.

618

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey W. Jensen*, of Law *Offices of Jeffrey W. Jensen*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Little A. Stewart appeals the judgment, entered upon his guilty plea, convicting him of one count of possessing more than forty grams of cocaine with the intent to deliver, contrary to WIS. STAT.

§ 961.41(1m)(cm)4. (2009–10).[2] Stewart argues that the trial court erred in denying his motion to suppress evidence of the crime because information provided to police from a person known only as "Black" via a confidential informant was insufficient to constitute probable cause to arrest him. He also argues that the trial court erred because the search incident to the arrest of the trunk into which he threw a bag of suspected cocaine was unlawful. We disagree. We hold that the facts on which police relied to arrest Stewart, including those provided by Black via the confidential informant, met the "totality of the circumstances test," *see, e.g., State v. Romero*, 2009 WI 32, ¶ 4, 317 Wis. 2d 12, 765 N.W.2d 756; therefore, there was probable cause to arrest him. We further conclude that the search of the trunk into which Stewart threw a bag of suspected cocaine was valid. We consequently affirm the judgment of conviction entered by the trial court.

## I. Background.

¶ 2. Stewart's arrest arose from a tip that Wisconsin Department of Justice Special Agent Timothy Gray received from a confidential informant. Gray received information from the informant that Stewart would be arriving in Milwaukee's Mitchell Airport on a commercial airline flight at about 11:30 p.m. on March 10, 2009, carrying approximately thirteen and a half ounces— about $40,000 worth—of cocaine.

¶ 3. Agent Gray had a close working relationship with the confidential informant. Gray arrested him a year and a half earlier for delivery of cocaine base. Since that arrest, the informant provided Gray with informa-

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

tion regarding two other drug trafficking investigations in the Milwaukee area. Gray testified at Stewart's suppression hearing that the informant provided accurate information in both investigations; he also testified that he was not aware of the informant ever providing inaccurate information. Gray further testified that two Milwaukee police officers who also knew this particular informant told him that all of the information the informant had provided to them had been reliable.

¶ 4. On March 10, 2009, the informant told Gray that one of the people who had been arrested with Alderman McGee was going to be bringing cocaine to Milwaukee. Gray obtained the names and photographs of individuals who had been arrested in Alderman McGee's case, showed them to the informant, and asked him to identify the person in question. The informant identified Stewart.

¶ 5. The informant told Gray that Stewart would be arriving at Mitchell Airport at about 11:30 p.m. on a flight from Las Vegas and that the flight was running a little late. The informant explained that he knew about Stewart because another individual, known only as "Black," had contacted him and asked if he would like some cocaine that Stewart would be bringing to Milwaukee. According to the informant, after he (the informant) had originally requested nine ounces of cocaine, Black contacted him again and told him that Stewart had called and asked if the informant would like thirteen and a half ounces instead. The informant decided to take the larger amount. The informant told Agent Gray that he did not know Black's real name, but that he associated with Black as a friend and through drug dealing. The informant also told Gray that on two prior occasions he had gone to a residence with Black to obtain cocaine that Stewart had brought to town. On

those occasions, Black went into the residence and brought out cocaine, which the informant saw when Black brought it to their vehicle.

¶ 6. After speaking with the informant, Agent Gray verified that there was in fact a flight from Las Vegas scheduled to arrive at Mitchell Airport at 11:30 p.m. that night. Knowing that only Midwest Express had flights from Las Vegas to Milwaukee, Gray went to the airport and spoke with a Midwest Express representative, who confirmed that Stewart was on the above-mentioned flight.

¶ 7. Gray and several Milwaukee police officers then positioned themselves in the terminal and baggage claim areas. Around midnight, Agent Gray saw Stewart in the terminal area taking the escalator down to the baggage claim. Gray stationed himself outside the baggage claim exit.

¶ 8. Shortly thereafter, Stewart emerged carrying a small white plastic bag. Given the size of the bag and Gray's extensive experience in drug arrests, Gray believed that the thirteen and a half ounces of cocaine that Stewart was allegedly carrying would have fit inside. Stewart exited the airport and approached a vehicle parked just outside the baggage claim area.[3] The vehicle's trunk was already open. Stewart began staring at the agents, at which point they decided to approach him. As they did so, Stewart made what Gray described as a "furtive movement," tossed the bag into the trunk, and then took a step away from the trunk. Stewart was then placed under arrest.

¶ 9. The officers took Stewart into custody and searched him. The car's trunk was also searched and

---

[3] The vehicle belonged to Stewart's daughter, who had driven to the airport to pick up Stewart.

the bag was seized. The bag contained approximately thirteen and a half ounces of cocaine and two ounces of marijuana.

¶ 10. Stewart was charged with one count of possession with intent to deliver less than forty grams of cocaine and one count of possession of THC. The THC charge was dropped, and Stewart pled not guilty to the cocaine charge. Stewart then filed a pretrial motion to suppress all evidence seized by police. The motion alleged that the police lacked probable cause to arrest Stewart and lacked probable cause to search the trunk of the car. The trial court denied the motion, determining that there was probable cause to arrest Stewart and that he did not have standing to challenge the search of the car. After the trial court denied his motion to suppress, Stewart pled guilty. He now appeals.

## II. ANALYSIS.

¶ 11. Stewart presents two arguments on appeal. He argues that the trial court erred in denying his motion to suppress because police had no probable cause to arrest him. He also argues that the trial court erred in denying his motion because he did in fact have standing to challenge the search of the car. We discuss each argument in turn.

### A. Police had probable cause to arrest Stewart.

¶ 12. We turn first to Stewart's assertion that police lacked probable cause to arrest him. "Every lawful warrantless arrest must be supported by probable cause." *State v. Nieves*, 2007 WI App 189, ¶ 11, 304 Wis. 2d 182, 738 N.W.2d 125. *Nieves* explained:

> Probable cause to arrest is the sum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime. An arrest is legal when the officer making the arrest has reasonable grounds to believe that the person has committed or is committing a crime.

*Id.* (citations omitted); *see also* WIS. STAT. § 968.07(1)(d) (arrest without warrant lawful when "[t]here are reasonable grounds to believe that the person is committing or has committed a crime").

¶ 13. Furthermore,

> [i]n determining whether probable cause exists, the court applies an objective standard, and is not bound by the officer's subjective assessment or motivation. The court is to consider the information available to the officer from the standpoint of one versed in law enforcement, taking the officer's training and experience into account. The officer's belief may be predicated in part upon hearsay information, and the officer may rely on the collective knowledge of the officer's entire department. When a police officer is confronted with two reasonable competing inferences, one justifying arrest and the other not, the officer is entitled to rely on the reasonable inference justifying arrest.

*State v. Kutz*, 2003 WI App 205, ¶ 12, 267 Wis. 2d 531, 671 N.W.2d 660 (citations omitted).

¶ 14. In Stewart's case, the pertinent facts are:

- On March 10, 2009, a reliable confidential informant told Agent Gray that one of the people who had been arrested with Alderman McGee was going to be bringing cocaine to Milwaukee. After Gray obtained the names and photographs of individuals who had been

arrested in Alderman McGee's case and showed them to the informant, the informant identified Stewart.

• The informant told Gray that Stewart would be arriving at Mitchell Airport at about 11:30 p.m. on a flight from Las Vegas and that the flight was running a little late.

• Agent Gray verified that there was in fact a flight from Las Vegas scheduled to arrive at Mitchell Airport at 11:30 p.m. that night, and also confirmed that Stewart was on the flight.

• Around midnight, Agent Gray saw Stewart in the terminal area taking the escalator down to the baggage claim. Shortly thereafter, Stewart emerged carrying a small white plastic bag, which according Gray—who had extensive experience in drug arrests—could have held thirteen and a half ounces of cocaine.

• As police approached Stewart, he made a "furtive movement," tossed the bag into the trunk, and then took a step away from the trunk.

■

¶ 15. In light of the foregoing facts, we conclude that police had probable cause to arrest Stewart. Though Stewart directs us to a version of the facts that he contends falls short of establishing probable cause, even if we were to conclude that his version creates a reasonable competing inference, "[w]hen a police officer is confronted with two reasonable competing inferences, one justifying arrest and the other not, the officer is entitled to rely on the reasonable inference justifying arrest." *See id.*

■

¶ 16. Moreover, we do not agree with Stewart's argument that "because the informant was nothing

more than a conduit for Black's assertions" we ought to disregard any facts establishing probable cause that the confidential informant supplied; rather, we agree with the State that *Romero*, 317 Wis. 2d 12, ¶¶ 4, 8–9, 43, which held that information from a person unknown to police, when relayed via a confidential informant, can form the basis for the probable cause required to obtain a search warrant, controls the instant case.

¶ 17. In *Romero*, a confidential informant purchased cocaine from a "Mr. X," who claimed he had obtained the cocaine from the defendant. *Id.*, ¶ 9. Neither the police nor the informant actually witnessed Mr. X acquire the cocaine. *Id.* As in the case before us, the defendant did not challenge the veracity of the informant; he only challenged the veracity of Mr. X. *See id.*, ¶ 29. Even though the search warrant affidavit did rely heavily on Mr. X's veracity, and even though information regarding Mr. X was "sparse," *see id.*, ¶¶ 32–33, the supreme court nevertheless concluded that the affidavit provided adequate support for the warrant to search the defendant's residence because the "[f]acts set forth in the affidavit demonstrate[d] Mr. X's veracity to a degree sufficient to show, considering the totality of the circumstances . . . a substantial basis for concluding that there was a fair probability that a search would uncover evidence of wrongdoing at the defendant's residence." *Id.*, ¶ 34.

¶ 18. In arriving at its holding in *Romero*, the supreme court focused on two factors. First, law enforcement officers were able to corroborate some of Mr. X's assertions before seeking a warrant. *Id.*, ¶ 35. Second, Mr. X made numerous statements against his penal interest. *Id.*, ¶¶ 36–37. The supreme court concluded that statements against penal interest may be

used to establish reliability even when the declarant is unaware that the listener is a police officer. *Id.*, ¶ 39. *Romero* further explained that the question was not whether the inference that Mr. X was telling the telling the truth was the only permissible inference, but whether that inference was in fact a reasonable one. *Id.*, ¶ 41.

¶ 19. The same factors that led the supreme court to conclude that Mr. X's statements to a confidential informant were enough to establish probable cause in *Romero* are also present with respect to Black. First, the police in this case were able to independently corroborate some of the information provided by Black. *See id.*, ¶ 35. Black told the informant that the man whom the informant identified as Stewart would be flying from Las Vegas to Milwaukee on a flight that was scheduled to arrive shortly after 11:30 p.m. on March 10, 2009. Agent Gray verified that there was a Midwest Express flight from Las Vegas that was scheduled to arrive in Milwaukee at that time, and also confirmed that Stewart was on that particular flight. Then, around midnight, Gray actually saw Stewart in the terminal heading to the baggage claim. Second, Black made statements to the informant that were against his penal interest. *See id.*, ¶¶ 36–37, 39. Black set up the deal between Stewart and the informant. Black also contacted the informant and asked if he would like the cocaine that Stewart was bringing to Milwaukee. After the informant requested nine ounces, Black told the informant that Stewart had called and notified him that thirteen and a half ounces was available.

¶ 20. Additionally, we agree with the State that the facts establishing Black's credibility go beyond those that met the totality of the circumstances in

*Romero*. For example, in *Romero*, the warrant affidavit did not describe Mr. X's relationship with either the confidential informant or the defendant. *See id.*, ¶ 33. In the case before us, on the other hand, the informant said that he associated with Black socially and also through drug dealing. In addition, the informant in this case had gone with Black on two prior occasions to a residence to obtain cocaine that Stewart had brought to Milwaukee. The informant's prior dealings with Black in drug deals involving Stewart significantly bolsters Black's credibility and the reliability of the information that Black gave the informant.

¶ 21. While Stewart urges us to disregard *Romero* because it differs factually from his case, we reject this argument because the factual distinctions he calls to our attention· are superficial and not substantively distinguishable. Specifically, Stewart argues that *Romero* should not control because it was a search warrant case, not a warrantless arrest case. But the issue is the same—whether there was probable cause. We must analyze the totality of the circumstances in both situations. *See id.*, ¶¶ 4, 43 (probable cause to support search warrant); *Nieves*, 304 Wis. 2d 182, ¶ 11 (probable cause for arrest). Stewart also argues that *Romero* is distinguishable because in that case the confidential informant was searched by police prior to the transaction and found to have obtained drugs from the house police intended to search, whereas in Stewart's case no drugs were obtained prior to his arrest. Returning to our "totality of the circumstances" analysis, however, we note that the fact that the informant in *Romero* obtained drugs prior to the search was only one of many facts which together established probable cause, and that no single fact was dispositive. *See id.*, 317 Wis. 2d 12, ¶ 43. Our view of the numerous

facts relied on by police in Stewart's case yields the same result—that police had probable cause to arrest him.

¶ 22. In sum, we hold that police had probable cause to arrest Stewart given the totality of the circumstances in this case—including those facts provided by Black via the confidential informant. Therefore, the trial court did not err in denying Stewart's motion to suppress.

*B. The search of the car did not violate Stewart's Fourth Amendment rights.*

██

¶ 23. Stewart also challenges the trial court's determination that he lacked standing to challenge the search of the trunk of his daughter's car. Stewart implores us to consider the issue not as whether he had standing to challenge the search of the trunk, but instead, whether he had standing to challenge the search of the white plastic bag that he threw into the trunk. In response, the State argues that, regardless of the trial court's stance on standing, the search of the trunk was a valid search incident to arrest. *See Mercado v. GE Money Bank*, 2009 WI App 73, ¶ 2, 318 Wis. 2d 216, 768 N.W.2d 53 (appellate court may affirm trial court's order on different grounds than those relied on by trial court). We agree with the State.

> To begin, we note that in most instances, a defendant who pleads guilty waives all nonjurisdictional defects and defenses. However, WIS. STAT. § 971.31(10) . . . makes an exception to this rule, [and] allows appellate review of an order denying a motion to suppress evidence, notwithstanding a guilty plea. When we review a [trial] court's ruling on a motion to sup-

press evidence, we apply the clearly erroneous standard to the [trial] court's findings of fact. However, we review the [trial] court's application of constitutional principles to the findings of fact de novo. Further, we are not constrained to the [trial] court's reasoning in affirming or denying its order; instead, we may affirm the [trial] court's order on different grounds.

*State v. Smiter*, 2011 WI App 15, ¶ 9, 331 Wis. 2d 431, 793 N.W.2d 920 (citations and footnote omitted).

■

¶ 24. Under the Fourth Amendment to the United States Constitution and article I, section eleven of the Wisconsin Constitution, warrantless searches are presumptively unreasonable unless an exception applies. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *Smiter*, 331 Wis. 2d 431, ¶ 10. One such exception applies when, incident to a lawful arrest, police search a vehicle when "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (citing *Thornton v. United States*, 541 U.S. 615, 632, (2004) (Scalia, J., concurring in judgment)); *see also State v. Dearborn*, 2010 WI 84, ¶ 27, 327 Wis. 2d 252, 786 N.W.2d 97.[4] Thus, because police did not have a search warrant and because Stewart was lawfully under arrest, the issue before us is whether it was reasonable for police to believe that evidence of the crime for

---

[4] In *State v. Dearborn*, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97, the Wisconsin supreme court adopted *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009), "as the proper interpretation of the Wisconsin Constitution's protection against unreasonable searches and seizures." *Dearborn*, 327 Wis. 2d 252, ¶ 3; *see also State v. Smiter*, 2011 WI App 15, ¶ 1 n.1, 331 Wis. 2d 431, 793 N.W.2d 920.

which he was arrested might be found in the car's trunk. *See Gant,* 129 S. Ct. at 1719; *Dearborn,* 327 Wis. 2d 252, ¶ 27.

¶ 25. We conclude that, under the particular circumstances of this case, the search of the trunk was reasonable because police did have reason to believe that cocaine was inside. *See Gant,* 129 S. Ct. at 1719; *Dearborn,* 327 Wis. 2d 252, ¶ 27. As noted above, Stewart arrived at Mitchell Airport via a flight from Las Vegas, just as Agent Gray's confidential informant said he would. Further corroborating the informant's information, Stewart exited the airport carrying a white plastic bag that, according to Gray's experience, could have held thirteen and a half ounces of cocaine. Additionally, when approached by police, Stewart tossed the bag into the trunk. Given that police actually saw him throw the bag into the trunk, and given that Stewart's movements corroborated the informant's information so precisely, they had every reason to believe that cocaine would be in the trunk.

¶ 26. While Stewart analogizes his case to *United States v. Most,* 876 F.2d 191, 192–93 (D.C. Cir. 1989), in which police searched a gym bag that the defendant had checked at the front of a store without a warrant, that case is inapposite because prior to searching the bag, police never had probable cause to believe that the defendant had committed a crime, *see id.* at 196. Moreover, we note that *Most* is a federal case from the D.C. Circuit, and is therefore not binding on this court. *See State v. Muckerheide,* 2007 WI 5, ¶ 37, 298 Wis. 2d 553, 725 N.W.2d 930. Stewart's case is instead much more akin to *Smiter,* in which a police search of a car following a drug arrest was lawful under the Fourth Amendment. *See id.,* 331 Wis. 2d 431, ¶¶ 3–4, 8, 18 (finding probable cause to search vehicle after police

recovered marijuana blunt thrown from vehicle's front window and placed occupant under arrest).

¶ 27. Because Stewart was lawfully under arrest for cocaine possession and because police had reason to believe that cocaine was in the car's trunk, the warrantless search of the trunk was reasonable and valid under the federal and Wisconsin constitutions. *See Gant*, 129 S. Ct. at 1719; *Dearborn*, 327 Wis. 2d 252, ¶ 27. Therefore, even though the trial court denied Stewart's motion to suppress on different grounds, we conclude that it did not err in doing so.

¶ 28. Given that there was probable cause to arrest Stewart and the resulting search of the car's trunk was valid, we affirm the judgment of conviction entered by the trial court.

*By the Court.*—Judgment affirmed.