COURT OF APPEALS
DECISION
DATED AND FILED

July 14, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP157-CR**

Cir. Ct. No. 2017CF572

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARCUS LORENZO JEW,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: MICHAEL J. HANRAHAN, Judge. *Affirmed.*

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Marcus Lorenzo Jew appeals the judgment convicting him, upon the jury's guilty verdicts, of first-degree recklessly endangering safety, as a party to a crime, while using a dangerous weapon; possession of a firearm by a felon; misdemeanor unlawful use of a telephone by threatening harm, as an act of domestic abuse; misdemeanor disorderly conduct, as an act of domestic abuse; and misdemeanor disorderly conduct, while using or threatening to use a dangerous weapon.[1]

¶2 Jew argues that the trial court erred by denying his motion to sever counts and to suppress evidence. He also argues that the trial court erred when it: (1) denied his motion to exclude the recordings of three 911 calls; (2) admitted the recording of a call that Jew made from jail stating that he had been convicted of three felonies; and (3) excluded potential impeachment evidence. We are not persuaded and, therefore, we affirm the judgment.

## BACKGROUND

¶3 This case arose from Jew's conduct between January 12, 2017, and January 31, 2017, with respect to two victims, T.B. and N.E. T.B. and Jew were in a relationship for several years and they had a child in common.[2] Until mid-January 2017, T.B. and her two children lived with Jew in his mother's home.

---

[1] In this case (572 case), the jury also returned a not guilty verdict on the stalking while armed charge. The trial of this case was joined with that of *State v. Jew*, case No. 2017CF1512 (1512 case), and Jew was convicted on the five charges in this case. This appeal is solely from the judgment in the 572 case. However, to provide essential context for this appeal we make limited references to the 1512 case record, taking judicial notice of the information relating to that case from Wisconsin's Consolidated Court Automation Program (CCAP) website. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (stating that this court may take judicial notice of information entered by court staff on CCAP).

[2] T.B. and Jew's daughter was about one year old as of January 2017.

¶4 N.E. had known T.B. for over twenty years, because T.B.'s father and N.E. had periodically dated since they were in high school. N.E. viewed T.B. as a stepdaughter and T.B.'s children as grandchildren. T.B. referred to N.E. as mom.

¶5 In approximately mid-January 2017, T.B. and her two children moved out of Jew's mother's home. Jew then began repeatedly calling T.B., sending her threatening text messages, parking outside wherever she was staying, and demanding to see her.

¶6 On January 15, 2017, Jew appeared at N.E.'s home on North 24th Place in Milwaukee, where T.B. was staying, and threatened to shoot up the home. On January 31, 2017, Jew participated in two separate shooting incidents outside N.E.'s home, approximately two hours apart. Jew regularly drove his mother's blue Chevrolet Impala, and the Impala was seen outside N.E.'s home on January 15, 2017, and during both of the January 31, 2017 shooting incidents.

¶7 Shortly after the second January 31, 2017 shooting incident, City of Milwaukee Police Department (MPD) officers arrested Jew on the 3900 block of North 37th Street in Milwaukee where he was driving the Impala. After Jew's arrest, an officer searched the Impala and recovered a loaded handgun with a loaded magazine, and a loaded spare magazine.

¶8 On February 4, 2017, the State filed the six-count criminal complaint in this case. The State charged Jew with stalking while armed; first-degree recklessly endangering safety, as a party to a crime, while using a dangerous weapon; possession of a firearm by a felon; misdemeanor unlawful use of a telephone by threatening harm, as an act of domestic abuse; misdemeanor disorderly conduct, as an act of domestic abuse; and misdemeanor disorderly

3

conduct, while using or threatening to use a dangerous weapon. Following Jew's arrest, he was detained at the Milwaukee County Jail, where all calls of detainees are routinely recorded. At Jew's initial appearance in this case, a Milwaukee County Circuit Court Commissioner issued an order directing Jew not to have any contact with T.B. or N.E.

¶9    While Jew was in jail, he called T.B. and tried to dissuade both T.B. and N.E., through T.B., from cooperating with the State. Based on those recorded calls from the jail, the State charged Jew in the 1512 case with five additional criminal offenses, relating to his attempt to intimidate T.B. and N.E.[3]

¶10    At a July 7, 2017 final pretrial conference, the State requested that the trial court issue an order directing that this case and the 1512 case be tried together. Jew objected. The trial court granted the State's request.

¶11    Subsequently, Jew filed a motion to sever in this case, requesting that counts one through three be tried separately from counts four through six. Jew also filed a motion to suppress all of the evidence obtained from the search of the Impala at the time of his arrest. He also filed a motion seeking to bar the State from introducing, at trial, the recordings of three 911 calls made by T.B. and N.E. related to his underlying conduct. The trial court heard Jew's severance motion on December 21, 2017,[4] and subsequently denied the motion.

---

[3] The 1512 case charged Jew with one count of intimidation of a victim, T.B., by threatening force; one count of misdemeanor intimidation of a victim, T.B., by dissuading complaints, as an act of domestic abuse; and three counts of intimidation of a witness, N.E., in connection with a felony case.

[4] At the severance motion hearing, trial counsel added an oral request to sever the counts in the 1512 case so that the counts involving T.B. would be tried separately from the counts involving N.E.

¶12    By letter dated December 27, 2017, the State advised the trial court that it intended to introduce the recordings of three 911 calls at trial.  The State gave notice that it intended to introduce into evidence the recordings of 911 calls that T.B. made on January 12, 2017, and January 15, 2017, respectively; and a 911 call that N.E. made on January 15, 2017.

¶13    On January 8, 2018, prior to selecting the jury, the trial court heard testimony and received evidence on Jew's motion to suppress all of the evidence obtained from the search of the Impala at the time of his arrest.  This included the testimony of MPD Officer Patrick Shannon, who was involved in Jew's arrest, and the testimony of MPD Officer Bryan Miller, who searched the Impala after Jew's arrest and found the loaded gun with its loaded magazine and an additional loaded magazine.  The trial court orally denied Jew's motion to suppress.  The trial court concluded that the officers had reasonable suspicion to stop the Impala; they had probable cause to arrest Jew; and that, following Jew's arrest, the officers could lawfully search the areas of the Impala that were accessible to Jew.  Therefore, the trial court denied Jew's motion to suppress.

¶14    The trial court next addressed Jew's motion to exclude the three 911 calls.  The trial court analyzed the facts of each call and denied the motion.  The trial court also stated that, if requested by trial counsel, it would evaluate whether to provide a curative jury instruction advising the jury not to consider the emotional state of either 911 caller.

¶15    During the trial, the jury heard the testimony of T.B. and N.E., several MPD police officers, and Jew's mother.  The State also played the recordings of the three 911 calls and the surveillance videos that showed a vehicle parked outside N.E.'s home at the time of the two shooting incidents.

¶16     Outside the presence of the jury, the State asked Jew if he wanted to stipulate that he had been convicted of a felony before January 31, 2017, for purposes of the possession of a firearm by a felon charge.[5]  Trial counsel advised the trial court that Jew was not prepared to enter into that stipulation.  Because Jew did not enter into the stipulation, the State played Jew's recorded call from jail stating that he had three prior felony convictions and introduced a 2006 judgment of conviction showing that Jew had a felony conviction prior to January 31, 2017.

¶17     On the third day of trial, trial counsel asked N.E. about the 911 calls that she made to the police, and she stated, "All the time I called the police, it had to deal with [T.B.] and [Jew]."  Trial counsel then asked, "All the time?," and N.E. said, "Yeah."   Trial counsel then asked N.E. about calling 911 regarding her daughter's boyfriend.   The State objected on relevance grounds.   After an unrecorded sidebar, the trial court sustained the objection.

¶18     After the closing arguments, the trial court instructed the jury that it should not be swayed by sympathy, prejudice, or passion.  It also instructed the jury that each count charged a separate crime, that it was required to consider each count separately, and that its verdict on one count should not affect its verdict on any other count.  On January 12, 2018, the jury returned guilty verdicts on five charges (counts two through six) and a not guilty verdict on the stalking charge (count one).

---

[5] To prove Jew was guilty of possession of a firearm by a felon, the State had to prove that Jew was convicted of a felony in Wisconsin before January 31, 2017.

¶19 At sentencing in the case underlying this appeal, the trial court imposed a global sentence of seven years of initial incarceration and thirteen years of extended supervision.[6]

¶20 This appeal follows. Additional facts relating to the issues on appeal are included.

## DISCUSSION

¶21 Jew argues that the trial court erred by denying his motions to sever specific counts and to suppress evidence seized from the Impala at the time of his arrest. He also argues that the trial court made three erroneous evidentiary rulings. Specifically, he asserts that the trial court erred by denying his motion to exclude the recordings of the three 911 telephone calls made by T.B. and N.E. and by admitting into evidence the recording of a call that Jew made from the jail during which he admitted that he had three prior felony convictions. He further argues that the trial court erred by excluding potential impeachment evidence regarding N.E. We address each argument in sequence.

### I. Severance

¶22 Jew moved to sever the stalking related counts—stalking (count one), unlawful use of a telephone (count two), and disorderly conduct (count

---

[6] The trial court later commuted the period of Jew's extended supervision to ten years because the terms it had ordered exceeded the maximum penalties authorized by WIS. STAT. § 973.01(2)(d)4 (2017-18). In the 1512 case, the trial court imposed a global sentence of one year initial confinement and three years extended supervision consecutive to the sentence in the case underlying this appeal.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

7

three)—from the trial of the shooting-related counts—first-degree reckless endangering safety (count four), disorderly conduct (count five), and felon in possession of a firearm (count six). He argues that joinder of the counts was improper and that he was prejudiced by the joinder.

### Standard of review and applicable law regarding severance

¶23 Motions to sever involve a two-step process. The first step asks whether the charges were properly joined. Multiple charges may be joined together for trial when two or more crimes are: (1) of the same or similar character; (2) based on the same act or transaction; (3) based on two or more acts or transactions that are connected together; or (4) based on two or more acts or transactions that constitute a common scheme or plan. *See* WIS. STAT. § 971.12(1). In *State v. Salinas*, 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609, our supreme court stated that "'[w]hether the initial joinder was proper is a question of law that we review without deference to the trial court, and the joinder statute is to be construed broadly in favor of the initial joinder.'" *Id.* (citation omitted). Our review is, therefore, *de novo*. *See id.*

¶24 If the court determines joinder was proper, the second step asks whether prejudice would result from a trial on the joined offenses. *See id.* A trial court may order separate trials "[i]f it appears that a defendant or the [S]tate is prejudiced by a joinder of crimes[.]" *See* WIS. STAT. § 971.12(3); *State v. Linton*, 2010 WI App 129, ¶15, 329 Wis. 2d 687, 791 N.W.2d 222 (stating "[w]hen a defendant moves to sever, the trial court must determine what, if any, prejudice would result from a trial on the joined offenses and weigh that potential prejudice against the interests of the public in conducting a trial on the multiple counts.") (citation, one set of quotation marks, two sets of brackets, and comma omitted).

"In order to establish that the trial court erroneously exercised its discretion, the defendant must establish that he or she suffered 'substantial prejudice.'" *Linton*, 329 Wis. 2d 687, ¶15 (citation and one set of quotation marks omitted).

¶25     A trial court's decision on a motion to sever under WIS. STAT. § 971.12(3) is discretionary. *Salinas*, 369 Wis. 2d 9, ¶30. This court will affirm the decision if the trial court examined the relevant facts, applied a proper legal standard, and used a rational process to reach a conclusion that a reasonable court could reach. *See Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

### *The trial court properly denied the motion for severance*

¶26     Jew argues, in essence, that the initial joinder of counts was improper because they did not constitute part of a common scheme or plan. He argues that they are totally unrelated.

¶27     We disagree. Joinder of all the claims in this case was proper because they were "connected together" and constituted parts of a common scheme or plan. In determining whether separate crimes are sufficiently "connected together" for purposes of initial joinder, the factors to be considered include, but are not limited to the following:

> (1) are the charges closely related; (2) are there common factors of substantial importance; (3) did one charge arise out of the investigation of the other; (4) are the crimes close in time or close in location, or do the crimes involve the same victims; (5) are the crimes similar in manner, scheme or plan; (6) was one crime committed to prevent punishment for another; and (7) would joinder serve the goals and purposes of WIS. STAT. § 971.12.

*State v. Salinas*, 2016 WI 44, ¶43, 369 Wis. 2d 9, 879 N.W.2d 609 (citing *Francis v. State*, 86 Wis. 2d 554, 560, 273 N.W.2d 310 (1979).

¶28    The counts were "connected together" because they were committed by Jew based on separate acts or transactions against T.B., whom Jew sought to control and maintain power over after she moved out, and N.E., the person who sheltered T.B. *Salinas*, 369 Wis. 2d 9, ¶43, sets forth a variety of factors to be considered, many of which apply here. The counts in this case formed a series of close in time and closely related events involving a common factor of substantial importance—Jew's escalating conduct towards T.B. in retribution for her decision to stop living with him. When T.B. moved out, Jew threatened T.B. over the phone while she was at her grandmother's house and warned her via text messages not to ignore him. He drove to T.B.'s location, causing her to call the police out of fear; and three days later, Jew drove to where T.B. was staying—N.E.'s home— and he threatened to shoot up N.E.'s home because T.B. declined to come outside, resulting in the disorderly conduct charge.

¶29    Sixteen days after that, on January 30, 2017, Jew dropped T.B. off at N.E.'s home. Then, after 11:00 p.m., Jew reappeared unexpectedly asking for T.B. He was in the Impala and had both of T.B.'s children with him. Jew unsuccessfully tried to get inside N.E.'s home. He then fired shots outside N.E.'s home. A couple hours later, Jew returned to N.E.'s home in the Impala and, again, fired shots.

¶30    These circumstances indicate that the charged conduct was connected together. The crimes took place over nineteen days, a relatively short period of time. Each crime involved Jew and T.B. and his attempts to control T.B. Counts one, three, four, five, and six involved Jew driving the Impala to T.B.'s

location and engaging in activity outside that location in an effort to control T.B. They are also similar in manner and scheme: Jew threatened to beat and "slaughter" T.B. (count two) and yelled for T.B. to come outside and threatened to shoot up N.E.'s home (count three), and he demanded that T.B. come to the door of N.E.'s home and then, carrying out his earlier threat, engaged in two shooting incidents near N.E.'s home (counts four through six). Joinder was proper as a matter of law because the crimes were connected together. *See id.*, ¶30.

¶31    Therefore, in order to prevail on this motion, Jew must establish that he suffered "substantial prejudice" as a result of the trial court's denial of his motion to sever. *See State v. Locke*, 177 Wis. 2d 590, 597, 502 N.W.2d 891 (Ct. App.1993) (citation omitted). Further, when evidence of the counts sought to be severed would be admissible in separate trials, the risk of prejudice arising because of joinder is generally not significant. *See State v. Bettinger*, 100 Wis. 2d 691, 695, 303 N.W.2d 585 (1981).

¶32    Here, if the trial court had granted Jew's motion to sever counts one through three from counts four through six, the same facts and information could have been presented at both trials as other wrongful acts. Under the *Sullivan*[7] analysis, they would have been admitted for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. *See* WIS. STAT. § 904.04(2)(a). The evidence would also have been admissible to show the context of the crimes. *See State v. Hereford*, 195 Wis. 2d 1054, 1069, 537 N.W.2d 62 (Ct. App. 1995).

---

[7] *See State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998).

¶33    Jew has the burden of proving that the probative value of the evidence is substantially outweighed by unfair prejudice.  Jew does not undertake that analysis.  He merely states that the trial court minimized the degree of prejudice, disputes that the two groups of counts were part of the same course of conduct, and quotes trial counsel's argument that jurors would be unable to compartmentalize the testimony and evidence for certain counts.  Jew's generalized statements about prejudice, joinder, and proof are insufficient to call into question the trial court's contrary prejudice determination.  It is not this court's role to develop arguments for a party.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating that courts may not act as advocates; inadequately briefed arguments may be ignored).

¶34    We also note the trial court's instructions minimized any possible prejudice arising from the joint trial of the counts.  In its final jury instructions, the trial court read from the information, including the relevant date of each charged crime and, to the extent applicable, the location of each crime and the identity of the victim.  The trial court also cautioned the jurors to consider each count separately, and not to let their verdict on one count affect their verdict on another count.  This court presumes the jurors followed such instructions.  *See State v. Hoffman*, 106 Wis. 2d 185, 213, 316 N.W.2d 143 (Ct. App. 1982).

¶35    Moreover, the jury returned a not guilty verdict on the stalking charge (count one).  The not guilty verdict weighs against Jew's argument that the jury prejudged him by concluding that he was a bad man because he was charged with multiple crimes.  In sum, we conclude that the trial court properly denied the motion to sever.  *See Salinas*, 369 Wis. 2d 9, ¶30.

12

## II. Suppression of evidence

¶36 Jew next argues that the police dispatcher's report that Jew was involved with the shots fired is not enough evidence to justify his arrest or the warrantless search of the Impala. Jew points to trial counsel's argument at trial that being involved does not mean that a person is necessarily a suspect and that the police officers did not testify that Jew was wanted for the shots fired.

¶37 The trial court concluded that the officers had reasonable suspicion to stop the Impala and, once they determined that Jew was the driver, they had probable cause to arrest Jew for his alleged involvement in the earlier shooting. The trial court further concluded that, after Jew was arrested, the officers could lawfully search, without a warrant, the areas of the Impala that would have been accessible to Jew, its driver. The trial court cited to *Arizona v. Gant*, 556 U.S. 332 (2009), generally, as supporting its conclusion that the post-arrest search of the Impala was legal.

### Standard of review and applicable law regarding suppression of evidence

¶38 When we review a trial court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the trial court's findings of fact. *See State v. Vorburger*, 2002 WI 105, ¶32, 255 Wis. 2d 537, 648 N.W.2d 829. However, we review the trial court's application of constitutional principles to the findings of fact *de novo*. *See id.* Further, we are not constrained to the trial court's reasoning in affirming or denying its order; instead, we may affirm the trial court's order on different grounds. *See Mercado v. GE Money Bank*, 2009 WI App 73, ¶2, 318 Wis. 2d 216, 768 N.W.2d 53.

¶39     "Probable cause to arrest is the quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime." *See* *State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). Furthermore, "the warrantless search of an automobile is justified when a police officer has probable cause to believe that an automobile, found in a public place, contains evidence of a crime. No showing of exigent circumstances is required." *Id.* at 210. Under *Gant*, police are authorized to search an automobile "incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.*, 556 U.S. at 343 (citation omitted); *see also* *State v. Dearborn*, 2010 WI 84, ¶¶3, 26, 327 Wis. 2d 252, 786 N.W.2d 97 (citing *Gant*, 556 U.S. at 343, and accepting *Gant*'s interpretation of the United States Constitution).

### *The trial court properly denied the suppression motion*

¶40     Jew argues that the dispatcher's report that Jew was involved with the shots fired is not enough evidence to justify his arrest or the warrantless search of the Impala. The trial court rejected Jew's argument and held that "involved" meant that a person was a suspect, not a victim, of a crime.

¶41     Based upon our independent consideration of the facts as found by the trial court, we conclude that the police had reasonable suspicion to stop the Impala. Officer Patrick Shannon and his partner Officer Dustin McGuinness, who were dispatched to North 24th Place, the address of the second shooting incident, knew that Jew was a suspect in the first shooting incident that had also occurred on January 31, 2017, approximately two hours earlier, near the same address. Officer Shannon further knew that the Impala that he saw driving away from the

location of the second shooting incident matched the description of the car used by the suspect in the first shooting incident—a blue Impala. The officers following the Impala also knew that the Impala's license plate matched the partial license plate of the Impala associated with the first shooting. Some of this information was transmitted by the dispatcher. Additionally, arresting officers are entitled to "rely on the collective knowledge of the officer's entire department." *See State v. Stewart*, 2011 WI App 152, ¶13, 337 Wis. 2d 618, 807 N.W.2d 15. (citation omitted).

¶42 Officers Shannon and McGuinness then waited for more squads to arrive in the area before making a traffic stop of the Impala. During the stop, Officer McGuiness approached the driver's side of the Impala, spoke to the driver, and discovered that it was Jew. He also knew that Jew was the suspect in the shooting incidents. Jew was taken into custody. At that time, Officer McGuinness could reasonably believe that Jew had committed the crime of recklessly endangering safety by use of a dangerous weapon and/or disorderly conduct by use of a dangerous weapon. Therefore, he had probable cause to arrest Jew.

¶43 Jew was handcuffed and then placed in the back of Shannon's squad car. Next, officers searched the Impala because they believed that it contained a firearm because the Impala was involved in the shooting incidents. During the search of the Impala, Officer Bryan Miller recovered a firearm from a plastic pop-off access panel underneath the steering wheel.

¶44 Jew's argument relies on the definition of "involved" contained in *Webster's New Collegiate Dictionary* (1976)[8] as "being affected" or "implicated."

---

[8] The citation appears in Jew's initial appellate brief.

15

However, this dictionary definition bears, at best, minimal significance to the question of how a reasonable officer understood the term "involved" in this context and the officer's own testimony regarding his interpretation of the information that Jew was involved with the shots fired. *See Stewart*, 337 Wis. 2d 618, ¶¶12-13. Officer Shannon testified that there had been a "broadcast of the subject wanted involved" and he repeatedly referred to Jew as a suspect. We conclude that, based on the facts known to the officers, there was probable cause to arrest Jew as a suspect in the first shooting.

¶45 Once Jew was under valid arrest, the police could search the Impala if it was reasonable to believe that evidence relevant to the crime of arrest might be found in the Impala. *See Gant*, 556 U.S. at 342-43; *see also Dearborn*, 327 Wis. 2d 252, ¶¶3, 26. As noted above the officers determined that Jew, a suspect in the first shooting, was driving the Impala away from that home shortly after the second shooting alert. The officers reasonably believed that there might be a firearm in the Impala because, as Officer Shannon testified, the Impala was linked to the two January 31, 2017 shootings at the North 24th Place home. *See id.*

¶46 In sum, we conclude that the officers had reasonable suspicion for the traffic stop, probable cause to arrest Jew, and could lawfully search the Impala because it was reasonable for the officers to believe that evidence of the crime of arrest—a firearm and or ammunition would be found in the Impala. *See Gant*, 556 U.S. at 342-43; *see also Dearborn*, 327 Wis. 2d 252, ¶¶3, 26.

### III. Evidentiary rulings

¶47 Jew next argues that the trial court erred when it made several rulings regarding the admissibility of evidence.

16

*Standard of review and applicable law*

¶48    Our review of an evidentiary ruling is limited to determining whether the trial court properly exercised its discretion.  *See Chomicki v. Wittekind*, 128 Wis. 2d 188, 195, 381 N.W.2d 561 (Ct. App. 1985).  We will affirm the trial court if the trial court examined the relevant facts, applied a proper legal standard, and used a rational process to reach a conclusion that a reasonable court could reach.  *See Loy*, 107 Wis. 2d at 414-15.

¶49    A trial court exercises broad discretion regarding the admissibility of evidence.  *State v. Warbelton*, 2009 WI 6, ¶17, 315 Wis. 2d 253, 759 N.W.2d 557.  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and is generally admissible.  WIS. STAT. §§ 904.01 and 904.02.

***The trial court properly admitted the recordings of the three 911 calls into evidence***

¶50    Jew argues that the trial court erred by allowing the State to play the recordings of three 911 calls made by the victims; that is, the recordings of 911 calls that T.B. made on January 12, 2017, and January 15, 2017, respectively; and a 911 call that N.E. made on January 15, 2017.  He states that the trial court should have barred the evidence because the recordings were prejudicial, irrelevant, and cumulative.

¶51    In making this argument, Jew makes a series of conclusory statements about the 911 calls, arguing that the introduction of the recordings was unnecessary, repetitive, and prejudicial because T.B. and N.E. testified about the 911 calls at trial.  However, Jew does not include any citations to the record to

support his conclusory argument that T.B. and N.E.'s testimony overlapped with the content of each call to the point of being merely cumulative, and "[w]e have no obligation either to forage through a voluminous record for facts supporting a party's contention or to consider an inadequately presented argument." *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 109, ¶ 36, 293 Wis. 2d 668, 721 N.W.2d 127. Jew also does not develop any argument in support of his assertion that the calls were irrelevant. Jew's argument that the calls were prejudicial is merely conclusory and undeveloped. Thus, Jew's undeveloped arguments, which sometimes consist of nothing more than a sentence or two, would require us to develop them, which we decline to do. *See Pettit*, 171 Wis. 2d at 646-47 (stating that courts may not act as advocates and that inadequately briefed arguments may be ignored).

¶52 Jew also refers to the emotional nature of two 911 calls made by T.B. and states that they would lead the jury to decide the truth of the witness testimony based on emotion. He states that, in one call, T.B. expressed fear and may have been crying; and that, in the second call, T.B. was crying, gasping for breath, and highly emotional. He makes no attempt to explain what T.B. said or develop an argument as to how the 911 calls were, in fact, prejudicial. Moreover, Jew does not make any argument with respect to N.E.'s January 15, 2017 call and, therefore, abandoned the argument that N.E.'s 911 call was highly prejudicial. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (stating that "an issue raised in the trial court, but not raised on appeal, is deemed abandoned").

¶53 Based on the foregoing, we conclude that the trial court properly admitted the three 911 call recordings into evidence.

**The trial court properly admitted the recording of Jew's jail call regarding his felonies**

¶54 Jew next argues that it was unnecessary and prejudicial for the jury to hear that he had three prior felony convictions, because the State only needed to prove that he had been convicted of one felony to establish the felon in possession of a firearm charge.[9]

¶55 On appeal, Jew correctly concedes that his status as a convicted felon was an element of the felon in possession of a firearm offense. *See State v. Black*, 2001 WI 31, ¶18, 242 Wis. 2d 126, 624 N.W.2d 363. Thus, his statement was relevant evidence. His statement was also an admission by a party and, therefore, not inadmissible hearsay. *See* WIS. STAT. § 908.01(4)(b)1.

¶56 Jew declined to stipulate to being a felon. Therefore, the State was required to prove that element with the available admissible evidence.[10] The State offered evidence that Jew was a felon by presenting his recorded call to T.B. from jail in which he admitted that he had three prior felony convictions and a judgment of conviction indicating that Jew was convicted of a felony in 2006.[11]

---

[9] We do not know the precise nature of Jew's objection to the recorded admission of his three felonies at the trial because it was made during an unrecorded sidebar, the risks of which have been pointed out by our supreme court. *See State v. Wedgeworth*, 100 Wis. 2d 514, 528, 302 N.W.2d 810 (1981) (stating "[c]ounsel who rely on unrecorded sidebars do so at their own peril").

[10] In fact, the State could have introduced evidence of the specific crime that Jew was convicted of and the fact that the crime was a felony, but it chose to only present evidence that he was convicted of unnamed felonies.

[11] The State also only asked a Milwaukee County District Attorney's Office investigator whether he heard Jew discussing being a felon.

¶57    In its closing argument, the State simply noted that Jew discussed being charged because he is a felon and that he admitted to being a felon. It did not reference the fact that Jew had three prior convictions. It did not delve into the nature of the felony convictions and it also did not emphasize that Jew had been convicted of three felonies prior to January 31, 2017. *See* ***State v. McDougle***, 2013 WI App 43, ¶22, 347 Wis. 2d 302, 830 N.W.2d 243 (noting that the State had taken great care to introduce evidence of the defendant's two prior felonies in a way that proved the prior felony element of the felon in possession of a firearm charge without unfairly prejudicing the defendant). Jew cites no case or other authority for the proposition that where the defendant declines to stipulate to being a felon, evidence of multiple felony convictions is per se reversible error. Because the argument is undeveloped and lacks any legal authority, we do not address it. *See* ***Pettit***, 171 Wis. 2d at 646-47.

¶58    Based on the foregoing, we conclude that the trial court properly admitted Jew's recorded statement admitting that he had three felony convictions into evidence.

### The trial court properly prohibited trial counsel from pursuing impeachment of a witness

¶59    Jew next argues that the trial court erred when it prohibited trial counsel from impeaching N.E. regarding other 911 calls that she had made. Jew argues that N.E. testified on cross-examination that she had only made 911 calls concerning Jew. He asserts that this statement was apparently false because allegedly, N.E. also made 911 calls regarding her daughter's boyfriend. Trial counsel wanted to ask follow-up questions, which she asserted would impeach N.E.'s credibility. Jew argues that trial court should have permitted trial counsel to ask N.E. about each of her 911 calls to further establish the relevance of those

calls to this action. He argues that if N.E. lied about the 911 calls, and the calls had been made recently, her credibility would have been substantially impaired.

¶60 As stated, our review of an evidentiary ruling is limited to determining whether the trial court properly exercised its discretion. *See Chomicki*, 128 Wis. 2d at 195. We will affirm the trial court if the trial court examined the relevant facts, applied a proper legal standard, and used a rational process to reach a conclusion that a reasonable court could reach. *See Loy*, 107 Wis. 2d at 414-15.

¶61 Although Wisconsin follows the wide open cross-examination rule, a trial court retains the authority to limit the admission of prejudicial, irrelevant, or otherwise objectionable matters. *Desjarlais v. State*, 73 Wis. 2d 480, 502, 243 N.W.2d 453 (1976). "A trial court's decision not to permit cross-examination as to such matters is sustainable as an exercise of judicial discretion." *See State v. Becker*, 51 Wis. 2d 659, 667, 188 N.W.2d 449 (1971).

¶62 Whether N.E. had ever called the police about incidents that were not related to Jew and T.B. was not pertinent to this case and it would have wasted time at trial. The jury heard testimony that N.E. had a daughter who was inside N.E.'s home during the first shooting incident. However, trial counsel's question was the first time that her boyfriend was mentioned. Further questions on this topic would have needlessly sidetracked the jury away from the issues in the two cases before them and into new unrelated subjects involving N.E.'s daughter, her boyfriend, their relationship, the circumstances causing N.E. to call 911 about them, and whether those circumstances justified the 911 call. Moreover, Jew merely speculates that he would have been able to establish that N.E. lied about

the 911 calls and that, if the 911 calls were recently made, it would have substantially impaired N.E.'s credibility.

¶63 Thus, we conclude that the trial court did not erroneously exercise its discretion in sustaining the State's objection to trial counsel further questioning of N.E. regarding her 911 calls.

## CONCLUSION

¶64 Based on the foregoing, we affirm the trial court's judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.