# Supreme Court of Wisconsin

| | |
|---|---|
| CASE NO.: | 2021AP938-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| |        Plaintiff-Appellant-Petitioner, |
| |     v. |
| | Quaheem O. Moore, |
| |        Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 404 Wis. 2d 510, 979 N.W.2d 813
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 20, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 19, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Wood |
|   JUDGE: | Nicholas J. Brazeau, Jr. |

JUSTICES:
HAGEDORN, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, and REBECCA GRASSL BRADLEY, JJ., joined. DALLET, J., filed a dissenting opinion, in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *Jacob J. Wittwer,* assistant attorney general, with whom on the briefs was *Joshua L. Kaul,* attorney general. There was an oral argument by *Jacob J. Wittwer,* assistant attorney general.

For the defendant-respondent, there was a brief filed by *Joshua Hargrove, Tracey A. Wood, Teuta Jonuzi,* and *Tracey Wood &*

*Associates,* Middleton. There was an oral argument by *Joshua Hargrove.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP938-CR
(L.C. No. 2019CF711)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Appellant-Petitioner,**

    **v.**

**Quaheem O. Moore,**

    **Defendant-Respondent.**

**FILED**

**JUN 20, 2023**

Samuel A. Christensen
Clerk of Supreme Court

HAGEDORN, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, and REBECCA GRASSL BRADLEY, JJ., joined. DALLET, J., filed a dissenting opinion, in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 BRIAN HAGEDORN, J. After he was pulled over for speeding, officers searched Quaheem Moore based primarily on the smell of marijuana emanating from his vehicle. The circuit court[1] suppressed the results of that search, and the court of appeals affirmed. The State contends this was error. It argues

---

[1] The Honorable Nicholas J. Brazeau, Jr., of the Wood County Circuit Court presided.

the officers had probable cause to arrest Moore, and thus, this was a lawful search incident to arrest. We agree and reverse.

## I. BACKGROUND

¶2 On November 17, 2019, City of Marshfield Police Officer Libby Abel executed a traffic stop for speeding. While attempting to make the stop, Officer Abel "observed some sort of liquid fly out of the driver's window" and noticed the vehicle hit a curb while turning onto a side street. Officer Abel approached the vehicle, identified the driver and sole occupant as Quaheem Moore, and questioned him about the speeding and the liquid. During this initial contact, Officer Abel "detected an odor of raw marijuana." She called for back-up, and Officer Mack Scheppler arrived on the scene.

¶3 Both officers escorted Moore out the vehicle, in between his vehicle and Officer Abel's squad car. Officer Abel performed an initial safety pat-down for weapons.[2] She did not find any, but she did discover a vaping device.[3] She asked Moore

---

[2] During an investigative stop, officers are permitted to search a person's outer clothing for weapons if they have reasonable suspicion to believe that the person may be armed and dangerous. State v. McGill, 2000 WI 38, ¶¶21-22, 234 Wis. 2d 560, 609 N.W.2d 795. Moore does not challenge this search.

[3] A vaping device, commonly known as a "vape pen" or "vape," is a device that works "by heating and aerosolizing a liquid mixture" that "is inhaled as vapor." Big Time Vapes, Inc. v. Food & Drug Admin., 963 F.3d 436, 439 n.11 (5th Cir. 2020).

if it was a THC (tetrahydrocannabinols) vape, and he responded that it was a CBD (cannabidiol) vape pen.[4]

¶4 Officer Abel proceeded to question Moore. She first asked about the liquid, which she said she could still see on the side of the car and inside the window; but Moore denied throwing anything out of the window.[5] He explained that the vehicle was his brother's rental, and that he had taken it to the car wash earlier in the day. Officer Abel next asked Moore if he had been drinking, which he also denied. Then, Officer Abel told Moore that she smelled marijuana coming from the vehicle, but he immediately expressed disbelief. Officer Scheppler confirmed that he too smelled marijuana, and later described the odor as overwhelming. Moore continued to express his disbelief and insisted that the officers could not smell marijuana on him. Officers Abel and Scheppler agreed,

---

[4] The liquid in vape pens often contains "nicotine and sometimes flavoring." Id. However, the liquid mixture can also contain THC or CBD. Centers for Disease Control and Prevention, E-Cigarette, or Vaping, Products Visual Dictionary, 17, available at https://www.cdc.gov/tobacco/basic_information/e-cigarettes/pdfs/ecigarette-or-vaping-products-visual-dictionary-508.pdf. "THC is the main psychoactive chemical in marijuana." Id. at 18. And "CBD is the main ingredient in hemp and the second main ingredient in marijuana after THC," although it "is not a psychoactive substance." Id. at 20. Possession of THC is illegal; however, Wisconsin law permits possession of certain CBD products. See Wis. Stat. §§ 961.41(3g)(e) (2021-22); 961.14(4)(t).

All subsequent references to the Wisconsin Statutes are to the 2021-22 version.

[5] The officers never determined what this liquid was, but Officer Abel testified it was odorless.

3

indicating the smell was coming from the vehicle, not from Moore.

¶5 Eventually, the officers told Moore that they were going to search him based on the odor of marijuana. Officer Scheppler found only cash at first. Officer Abel then stepped away to search Moore's vehicle while Officer Scheppler and Moore chatted.[6] Several minutes later, Officer Scheppler noticed Moore's "belt buckle was sitting a little higher on his pants" and decided to examine the zipper area. Officer Scheppler testified, "I looked behind the belt buckle, I noticed that he had a bulge in his pants, and then in searching the zipper area, I felt a material that wasn't consistent to the pants fabric." He called Officer Abel back over, and she put Moore in handcuffs. The officers then moved Moore closer to the squad cars for privacy. Officer Scheppler ultimately found two plastic baggies containing cocaine and fentanyl in a false-pocket behind Moore's zipper.

¶6 The State charged Moore with two crimes: possession with intent to deliver narcotics and possession with intent to deliver more than one but less than five grams of cocaine——both as second and subsequent offenses and as a repeater. Moore moved to suppress evidence of the cocaine and fentanyl found by Officer Scheppler, arguing the State lacked probable cause to arrest and therefore to search him. The circuit court agreed

---

[6] Moore does not challenge the search of the vehicle.

4

and granted the motion. The court of appeals affirmed,[7] and we granted the State's petition for review.

## II. DISCUSSION

¶7 The United States Constitution provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."[8] U.S. Const. amend. IV. "Warrantless searches are presumed to be unconstitutional." State v. Denk, 2008 WI 130, ¶36, 315 Wis. 2d 5, 758 N.W.2d 775. But there are exceptions, and the State bears the burden to prove an exception applies. Id.

¶8 One exception is a search incident to an arrest. Id., ¶38; see also Wis. Stat. § 968.11. When conducting a search incident to arrest, the officer is not required to formally arrest before the search. State v. Sykes, 2005 WI 48, ¶15, 279 Wis. 2d 742, 695 N.W.2d 277. The "search may be incident to a subsequent arrest if the officers have probable cause to arrest before the search." Id. (quoting another source). "Probable cause to arrest is the quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably

---

[7] See State v. Moore, No. 2021AP938-CR, unpublished slip op. (Wis. Ct. App. July 28, 2022).

[8] The Wisconsin Constitution also provides, "The right of the people to be secure in their persons . . . against unreasonable searches and seizures shall not be violated . . . ." Wis. Const. art. I, § 11.

5

committed or was committing a crime." State v. Secrist, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). This requires more than a mere hunch or reasonable suspicion, but "does not require proof 'beyond a reasonable doubt or even that guilt is more likely than not.'" State v. Young, 2006 WI 98, ¶22, 294 Wis. 2d 1, 717 N.W.2d 729 (quoting another source). Probable cause is an objective test that "requires an examination of the totality of the circumstances." State v. Weber, 2016 WI 96, ¶20, 372 Wis. 2d 202, 887 N.W.2d 554. In analyzing this question, we uphold the "circuit court's findings of fact unless they are clearly erroneous" but independently review whether there was probable cause to arrest. Secrist, 224 Wis. 2d at 207-08.

¶9 In a case similar to this, we observed that "when an officer smells the odor of a controlled substance," the "common sense conclusion" "is that a crime has probably been committed." Id. at 218. In Secrist, the defendant pulled up to a police officer with his window down to ask for directions. Id. at 204. The defendant was the only person in the car. Id. The officer, who had frequent contact with marijuana in his 23 years as a police officer, "immediately smelled a strong odor of marijuana coming from the automobile." Id. He asked the defendant to get out of the vehicle and placed him under arrest for possession of marijuana. Id. at 205.

¶10 The defendant argued before this court that the smell of marijuana alone was not sufficient to establish probable cause. Id. at 213. We disagreed. Id. at 218-19. We held,

6

the odor of a controlled substance may provide probable cause to arrest when the odor is unmistakable and may be linked to a specific person or persons because of the particular circumstances in which it is discovered or because other evidence at the scene or elsewhere links the odor to the person or persons.

Id. at 217-18. We further explained, "The strong odor of marijuana in an automobile will normally provide probable cause to believe that the driver and sole occupant of the vehicle is linked to the drug." Id. at 218.

¶11 Moore asks us to construe our holding in Secrist as creating a three-part test that requires: (1) an unmistakable smell (2) linked to the suspect and (3) smelled by a trained and experienced officer who testifies accordingly. This effort to establish bright-line rules and prerequisites misses the mark. Secrist stressed——and we agree——that it was conducting a "totality of the circumstances" analysis; it did not purport to design new, higher standards to govern every case with factual similarities. Id. Rather, Secrist acknowledged the rather obvious connections necessary to establish probable cause in this kind of circumstance. Was the odor sufficiently identified as an illegal substance, most likely by someone (a law enforcement officer) who could make such an identification? If so, it was reasonable to believe that some illegal activity had occurred or was occurring. And therefore, the question is whether this illegal activity was sufficiently linked to the suspect such that a reasonable law enforcement officer would reasonably believe it was the suspect who was involved in the illegal drug activity.

7

¶12 Thus, the issue presented here is, examining the totality of the circumstances, whether a reasonable law enforcement officer would believe Moore probably committed or was committing a crime. The answer is yes. When Officer Abel pulled Moore over, she watched his vehicle hit the curb and observed a "liquid fly out the driver's window"; she later saw the liquid on the side of the car as well. And when she first approached the vehicle, she smelled raw marijuana. Officer Scheppler smelled it too, and even called it overwhelming. The circuit court found both officers' testimony regarding the smell credible, stating multiple times in its decision that the officers smelled a "strong" odor of marijuana. Moore does not challenge this factual finding. Critically, Moore was the sole occupant of the vehicle. And he was in possession of a vape pen. Taken together, a reasonable officer would believe it was Moore that was responsible for the overwhelming odor of a prohibited substance emanating from a vehicle with no other passengers. The officers need not know with certainty that Moore was committing or had committed illegal activity, but they had more than enough to meet the modest bar that it was probably true. Therefore, the officers had probable cause to believe a crime was or had been committed——at the very least, possession of THC. See Wis. Stat. § 961.41(3g)(e).

¶13 Moore provides several counterarguments, none of which are persuasive. First, he contends that the odor of marijuana was not sufficiently linked to him because the officers did not smell it on him, only in his vehicle. While Moore is correct

8

that the officers did not smell marijuana on his person, he was the sole occupant of the vehicle that bore a strong and overwhelming smell of marijuana. A reasonable law enforcement officer would believe Moore was probably connected with the illegal substance the officers identified. As we said in Secrist, "The strong odor of marijuana in an automobile will normally provide probable cause to believe that the driver and sole occupant of the vehicle is linked to the drug." 224 Wis. 2d at 218.

¶14 That leads to Moore's second counterpoint: the vehicle was not his, but his brother's rental. While this could constitute an innocent explanation——albeit, a strained one—— Moore misses the legal standard. Who owned the title or signed the rental lease does not change the analysis. See, e.g., State v. Stewart, 2011 WI App 152, ¶¶8 & n.3, 27, 337 Wis. 2d 618, 807 N.W.2d 15 (upholding a search incident to arrest of the defendant's daughter's car after police observed the defendant throw a bag into the trunk). A reasonable law enforcement officer would still likely conclude, absent other facts not in the record, that the driver and sole occupant of the vehicle was probably connected to the illegal substance whose odor the officer clearly detected in the vehicle.

¶15 Third, Moore contends that the odor of marijuana cannot be unmistakable when there are innocent explanations for it——such as the odor of CBD, a legal substance that Moore stated his vape pen was used for. The circuit court referenced this as well: "The State notes that CBD and marijuana are

9

indistinguishable in their odor. The Court didn't note testimony to that effect in the record, but it may exist there, and this Court will assume that is true." The State responds that this statement was taken out of context and is not a factual concession. Regardless of what the State said in its briefing to the circuit court, the circuit court found that the officers noticed "a strong smell of marijuana emanating" from the vehicle Moore was driving. While the officers might have reasonably inferred that the smell from the vehicle was CBD, that was not the only inference they could draw——they also could infer (and they did) that the smell was THC. It is black letter law that "an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause." State v. Nieves, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125; see also State v. Waldner, 206 Wis. 2d 51, 60, 556 N.W.2d 681 (1996). Therefore, while an innocent explanation may exist, we still conclude under the facts of this case, a reasonable law enforcement officer would infer that Moore had probably committed or was committing a crime.

¶16 Finally, Moore notes that neither Officer Abel nor Officer Scheppler testified with respect to their training and experience to detect the smell of marijuana. He asserts that without this testimony, the State failed to establish the odor was unmistakable. This argument, however, goes to the credibility of the officers. And credibility of a witness is a question left to the fact-finder. See State v. Burch, 2021

10

WI 68, ¶34, 398 Wis. 2d 1, 961 N.W.2d 314. The circuit court acting as fact-finder here found the officers' testimony credible and stated repeatedly that the officers noted the "strong smell" and "strong odor" of marijuana coming from the vehicle. It made this factual finding absent specific testimony regarding the officers' training and experience. Moore does not challenge this factual finding; nor do we conclude this finding is clearly erroneous. Furthermore, the fact that the officers testified to smelling marijuana suggests they know what marijuana smells like. See United States v. Ludwig, 508 F.2d 140, 142 (10th Cir. 1974) ("[I]nherent in the officer's statement that he smelled marihuana is the claim that he is familiar with that substance's odor."). It could be that a fact-finder will not believe an officer's identification of marijuana absent an on-the-record statement of training and experience. The changing legal status and ubiquity of marijuana could make the lack of such evidence vulnerable to attack. But again, we do not see why such testimony would be required. The relevant question is whether the testimony is sufficient to support a finding of fact. There was enough here without testimony regarding the officers' training and expertise to support a finding that they smelled illegal raw marijuana.


### III. CONCLUSION

¶17 Examining the totality of the circumstances, we hold that officers Abel and Scheppler had probable cause to arrest Moore on the belief that he was committing or had committed a

11

crime.   Therefore, the search incident to arrest did not violate the Fourth Amendment.   We reverse the court of appeals' decision to the contrary and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶18 REBECCA FRANK DALLET, J. *(dissenting)*. After pulling Moore over for speeding, police officers removed him from his car to conduct a pat-down search. They found no evidence that a crime had been committed, so Moore should have been free to go, perhaps with a speeding ticket. Instead, the officers conducted a second, more thorough search of Moore and found baggies containing cocaine and fentanyl concealed in his pants. The majority concludes that this second search was permissible because the officers had probable cause to arrest Moore on the basis that the car he was driving smelled like marijuana. I disagree; because the officers lacked probable cause to arrest Moore, the evidence they found should be suppressed.

I

¶19 On the night of November 17, 2019, Officer Libby Abel pulled Quaheem Moore over for speeding on a residential street. She called for backup. The sequence of events that followed was captured on the bodycam video. The officers removed Moore from the vehicle to conduct a pat-down search. While searching him, Officer Abel asked Moore if he had been drinking. He said "no." Officer Abel then told Moore she saw him throw something out of the driver's side window while pulling over, "[s]ome sort of beverage . . . . It's on the side of your car." Moore expressed confusion and explained that it was his brother's car and had been through a car wash earlier that day. Officer Abel asked Moore again if he had been drinking and when the last time was that he had an alcoholic drink. Moore replied, "yesterday."

1

He did not appear intoxicated and was not asked to take field sobriety tests. The only item the officers found during the pat-down search was a vape pen which Moore said was a "CBD vape." There is nothing in the record to contradict this statement.

¶20 Instead of letting Moore go with a speeding ticket, Officer Abel briefly paused and said for the first time, "Okay, okay, um . . . I also smelled mar——the odor of marijuana coming from the car." The second officer chimed in that he could smell it too. Later, at the suppression hearing, Officer Abel said that she had smelled "raw marijuana." Moore expressed disbelief and pulled his sweatshirt outwards exclaiming "You don't smell that shit on me." Officer Abel admitted, "I can't smell it right now."[1]

¶21 At this point, Officer Abel told Moore that the second officer was going to search him. That officer stated, "Just with the odor of marijuana, I'm going to be searching you." The officer found nothing. Several minutes later, the officer said that he had to search Moore's waistband. This time, the officer found bags containing cocaine and fentanyl concealed behind Moore's pants zipper. No marijuana was found on Moore and he was never charged with possession of marijuana.

¶22 Moore contends that the officers lacked probable cause to arrest him, and thus to conduct a search incident to arrest.

---

[1] The second officer seemingly agreed that Moore didn't smell like marijuana. After Moore said "You don't smell it on me," the officer responded, "But, but it's coming out of the car."

2

An officer has probable cause to arrest when "[t]here are reasonable grounds to believe that the person is committing or has committed a crime." Wis. Stat. § 968.07(1)(d); see also Illinois v. Rodriguez, 497 U.S. 177, 185 (1990) (explaining the reasonableness requirement of the Fourth Amendment). This standard demands "more than a possibility or suspicion that the defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." State v. Secrist, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). Probable cause is an objective test that "requires an examination of the totality of the circumstances." State v. Weber, 2016 WI 96, ¶20, 372 Wis. 2d 202, 887 N.W.2d 554.

¶23 The majority concludes that under the totality of the circumstances, "the officers had probable cause to believe a crime was or had been committed——at the very least, possession of THC." Majority op., ¶12. The circumstances the majority cites for this conclusion are the following:

- While coming to a stop, Moore's vehicle hit the curb;
- Officer Abel saw an unknown liquid fly out of the driver's window;
- Moore had a CBD vape pen; and
- Officer Abel and a second officer testified that they smelled the "strong" odor of "raw marijuana" coming from Moore's vehicle.

Id.

3

¶24 Almost none of these circumstances "would lead a reasonable police officer to believe" that Moore possessed THC. Secrist, 224 Wis. 2d at 212. Hitting the curb while pulling over might be evidence the driver was impaired, but Moore was not arrested for operating while intoxicated and there is no evidence of impairment from the bodycam footage or the officers' reports. Officer Abel's testimony about a liquid spraying out of the driver's side window is immaterial as well. There is nothing in the record about what the liquid was or linking it in any way to THC. Likewise there is nothing in the record that suggests Moore's vape pen was used for anything other than CBD——a legal substance.

¶25 That leaves only the smell of marijuana coming from the car Moore was driving——a fact the majority all but admits is the only support for probable cause to arrest Moore. See majority op., ¶12. In concluding that the smell of marijuana alone gave the officers probable cause to arrest Moore, the majority relies primarily on one 24-year old case decided when the use or possession of any amount of cannabis[2] was illegal nationwide. See Secrist, 224 Wis. 2d 201.

II

---

[2] Cannabis refers to a category of flowering plants which produce both hemp and marijuana. Hemp is a type of cannabis that contains low levels of the intoxicating chemical delta-9 tetrahydrocannabinol (THC). Marijuana is another type of cannabis known for its much higher concentration of THC. In 1996, both hemp and marijuana were illegal. See Ryan LeCloux, Regulating Wisconsin's Hemp Industry, Wisconsin Legislative Reference Bureau, Wisconsin Policy Project, Vol. 2 No. 9, at 1-4 (Aug. 2019), https://docs.legis.wisconsin.gov/misc/lrb/wisconsin _policy_project/wisconsin_policy_project_2_9.pdf.

4

¶26 On a summer day in 1996, Timothy Secrist rolled down his window to ask a police officer for directions. See Secrist, 224 Wis. 2d at 204. The officer was immediately struck by the strong odor of marijuana wafting from inside the vehicle. Id. Secrist was ordered to pull over and get out of the car and was then placed under arrest. Id. at 205. We concluded that the evidence seized after Secrist's arrest did not need to be suppressed, holding that the officer had probable cause to arrest Secrist because the officer identified the "unmistakable odor of a controlled substance and [wa]s able to link that odor to a specific person." Id. at 218. Applying Secrist to Moore's case, I conclude that the officers lacked probable cause to arrest, and therefore to search, Moore.

¶27 For starters, even if the officers smelled the "unmistakable" odor of marijuana coming from the car Moore was driving, the linkage between that smell and Moore was not particularly strong. See id. (stating that probable cause to arrest based on the "unmistakable" odor of marijuana must also be linked to a specific person). As Secrist explained, the likelihood that an occupant is linked to the smell of marijuana in a vehicle "diminishes if the odor is not strong or recent, if the source of the odor is not near the person, if there are several people in the vehicle, or if a person offers a reasonable explanation for the odor." Id. Here, it is true that Moore was the sole occupant of the car, thus increasing the probability that he was linked to the smell. But that linkage is weaker than it initially appears, since neither officer

5

smelled marijuana on Moore once he was out of the car and because Moore explained that he was driving a vehicle his brother had rented——a fact the officers subsequently verified.

¶28 More fundamentally, however, legal developments in the last 24 years may call into question a central premise of Secrist, namely that the odor of marijuana is "unmistakabl[y the] odor of a controlled substance." Id. Thirty-eight states have legalized medical marijuana and twenty-three of those have also legalized recreational marijuana.[3] Additionally, Congress modified the Controlled Substances Act in 2018 to remove hemp and hemp-derived products from the definition of marijuana, which legalized certain hemp products nationwide.[4] This means that virtually all adults can legally purchase hemp-derived

---

[3] See National Conference of State Legislatures, State Medical Cannabis Laws, tbl. 1, https://www.ncsl.org/health/state-medical-cannabis-laws. See also Joe Sonka, Kentucky Bill Legalizing Medical Marijuana Signed Into Law, Louisville Courier Journal (Mar. 30, 2023), https://www.courier-journal.com/story/news/politics/2023/03/30/medical-marijuana-bill-passes-in-kentucky-heads-to-beshears-desk/70062316007/ (identifying Kentucky as the 38th state to legalize medical marijuana); Shawna Mizelle & Sydney Kashiwagi, Minnesota Becomes 23rd State to Legalize Recreational Marijuana, CNN Politics (May 30, 2023), https://www.cnn.com/2023/05/30/politics/minnesota-cannabis-legalization-recreational-marijuana/index.html.

[4] See Agriculture Improvement Act of 2018, H.R. 2, 115th Cong. § 12619. The 2018 Farm Bill removed hemp from the legal definition of marijuana in the Controlled Substances Act. This made some hemp-derived products with less than 0.3% THC federally legal.

6

products from local CBD stores.[5] Hemp-derived products come in a variety of processed forms like gummies, oils, and creams, as well as in their unprocessed state as hemp flowers.[6] And just like marijuana, hemp flowers can be smoked, vaped, or eaten.[7] Unlike marijuana, however, hemp contains only trace amounts of the psychoactive compound THC——the main psychoactive ingredient in marijuana.[8]

¶29 Experts indicate that hemp flowers and marijuana are so similar in appearance and smell that even drug detection dogs can't tell the difference.[9] If true, this means that when a police officer smells what they believe to be the distinctive

---

[5] See Mike Sill, The Future of the CBD Industry in 2022 and Beyond, Forbes Business Council (Oct. 21, 2021), https://www.forbes.com/sites/forbesbusinesscouncil/2021/10/21/the-future-of-the-cbd-industry-in-2022-and-beyond (detailing the exponential growth of the CBD industry).

[6] See Elizabeth G. Dunn, They're Betting the Family Farm on Weed, N.Y. Times (Feb. 17, 2023), https://www.nytimes.com/2023/02/17/nyregion/hepworth-farms-cannabis.html (explaining the process of growing hemp).

[7] See Phil Dixon, Hemp or Marijuana?, UNC Sch. of Gov't: N.C. Crim. L. Blog (May 21, 2019), https://nccriminallaw.sog.unc.edu/hemp-or-marijuana.

[8] See Elizabeth G. Dunn, supra note 6.

[9] See North Carolina State Bureau of Investigation, Industrial Hemp/CBD Issues, available at https://www.sog.unc.edu/sites/default/files/doc_warehouse/NC%20SBI%20-%20Issues%20with%20Hemp%20and%20CBD%20Full.pdf ("Hemp and marijuana look the same and have the same odor, both unburned and burned. This makes it impossible for law enforcement to use the appearance of marijuana or the odor of marijuana to develop probable cause for arrest."); see also Cynthia Sherwood, Alexander Mills, & Davis Griffin, Even Dogs Can't Smell the Difference: The Death of "Plain Smell," As Hemp Is Legalized, 55 Tenn. Bar J. 14 (Dec. 2019).

7

odor of either raw or burnt marijuana, they could just as easily be smelling raw or burnt hemp. In light of the nationwide legalization of hemp, this raises the question: Should the smell of marijuana alone still justify a warrantless arrest?

¶30 Courts in jurisdictions that have legalized marijuana for medical or recreational purposes have answered "no," rejecting their Secrist-like cases in the process. Pennsylvania, for example, once had a rule that "where an officer is justified in being where he is, his detection of the odor of marijuana is sufficient to establish probable cause." Commonwealth v. Stainbrook, 471 A.2d 1223, 1225 (Pa. Super. Ct. 1984). In 2016, after Pennsylvania legalized the possession and use of medical marijuana in limited circumstances, the Pennsylvania Supreme Court concluded that change eliminated the "main pillar" of the state's prior rule regarding the smell of marijuana——that marijuana was illegal in all circumstances in Pennsylvania. Commonwealth v. Barr, 266 A.3d 25, 41 (Pa. 2021). Accordingly, the court held that "the smell of marijuana alone cannot create probable cause to justify a search." Id. Nevertheless, the court acknowledged that possession or use of marijuana remained illegal for those not qualified to possess medical marijuana. Id. For that reason, the court explained that "the smell of marijuana indisputably can still signal the possibility of criminal activity" and thus "may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." Id.

8

¶31 States that have decriminalized possession of small quantities of marijuana have reached similar conclusions. For example, the Maryland Court of Appeals held that a search incident to arrest was invalid because "nothing in the record suggest[ed] that possession of a joint and the odor of burnt marijuana gave the police probable cause to believe [the defendant] was in possession of a criminal amount of that substance." Pacheco v. State, 214 A.3d 505, 518 (Md. 2019); see also Lewis v. State, 233 A.3d 86, 99 (Md. 2020) (holding that the odor of marijuana alone doesn't indicate possession of a criminal amount of marijuana and police officers therefore lacked probable cause to arrest). The Minnesota Supreme Court likewise explained that although the odor of burnt marijuana might provide probable cause to believe that a "non-criminal amount" of marijuana is present, it cannot provide the basis for probable cause to arrest because there is no reason to believe a criminal amount of marijuana is present. State v. Ortega, 770 N.W.2d 145, 149 n.2 (Minn. 2009).

¶32 Although Wisconsin has not yet legalized medical or recreational marijuana, or decriminalized possession or consumption of marijuana, the reasoning in these cases demonstrates that marijuana's once-unique odor may no longer serve as the beacon of criminal activity it did a quarter-century ago. As discussed above, Wisconsinites can legally purchase, transport, and smoke or vape hemp products that experts indicate are identical to marijuana in look and smell. As such, officers who believe they smell marijuana coming from a

9

vehicle may just as likely be smelling raw or smoked hemp, which is not criminal activity. Moreover, in virtually all of Wisconsin's neighboring states——Illinois, Michigan, and Minnesota——recreational marijuana is now legal. With that, Wisconsinites may travel to neighboring states and consume marijuana without violating any state laws.[10] And experience teaches us that smells linger in cars, sometimes long after the item responsible for the smell is gone. In sum, Secrist's reliance on the smell of marijuana as an unmistakable indication of illegal activity sufficient to justify a warrantless arrest may no longer ring true.[11]

¶33 All things considered, the totality of the relevant circumstances here do not add up to probable cause to arrest and thus any evidence found during the search should be suppressed. Other than the officers' testimony that they smelled raw marijuana coming from the car Moore was driving, there was no reason to believe that Moore possessed THC. The smell the officers identified was not sufficiently linked to Moore under

---

[10] The Legislative Fiscal Bureau estimated that $36.1 million of Illinois' cannabis tax revenues in fiscal year 2022 were attributable to sales of cannabis to Wisconsin residents. Memorandum from Sydney Emmerich, Fiscal Analyst, Legislative Fiscal Bureau, to Senator Melissa Agard, at 2 (Mar. 10, 2023).

[11] For this reason, Secrist may be worth revisiting in a future case. See State v. Johnson, 2023 WI 39, ¶20, 407 Wis. 2d 195, 990 N.W.2d 174 (identifying several factors that we consider when deciding whether to overturn precedent, including when "the law has changed in a way that undermines the prior decision's rationale" and when "there is a 'need to make a decision correspond to newly ascertained facts'" (quoting another source)).

the circumstances of this case. See Secrist, 224 Wis. 2d at 218. And if experts are correct that there is no distinction between the odor of legal hemp products and marijuana, then a central premise of Secrist is called into question and further undermines probable cause. For all these reasons, I respectfully dissent.

¶34 I am authorized to state that Justices ANN WALSH BRADLEY and JILL J. KAROFSKY join this opinion.